DOUGLAS *v.* STATE OF INDIANA.

[No. 169S18. Filed August 12, 1970. Rehearing denied December 17, 1970.]

*Frederick J. Graf,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter E. Bravard, Jr.,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged by indictment filed June 19, 1968, in the Criminal Court of Marion County, Indiana, with "Commission of a Felony While Armed With a Deadly Weapon, To-Wit: Rape." The indictment, omitting heading, formal parts and signature, in pertinent part reads as follows:

> "The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that CARRIE DOUGLAS on or about the 14th day of MARCH, A.D. 1968, at and in the County of Marion and in the State of Indiana, being then and there over the age of sixteen (16)

years, did then and there unlawfully and feloniously commit-the crime of rape, by then and there having carnal knowl-edge of LUVENIA McCOY, a woman, forcibly against her will, she, the said LUVENIA McCOY then and there not being the wife of the said CARRIE DOUGLAS, while he, the said CARRIE DOUGLAS, was then and there armed with a deadly weapon, to-wit: a Pistol, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

Thereafter, on August 6, 1968, appellant filed a Notice of Alibi, and on August 7, 1968, a Motion to Amend Notice of Alibi, and on August 7, 1968, a Motion to Amend Notice of sel filed a "Motion for Disclosure and Production of Evidence Favorable to Accused." In view of appellant's Motion for New Trial, etc., we include in pertinent part such motion, omitting heading, formal parts, etc., viz:

"Comes now the Defendant in the above entitled cause, by Counsel, and respectfully moves this Court for an appro-priate Order requiring the State of Indiana to disclose, pro-duce and make available certain evidence favorable to the Defendant herein, now in the possession of the State of Indiana, and in support of said Motion would respectfully represent to this Court as follows:

1. That he has just cause to believe, and does believe, that the Prosecuting Attorney and/or the Police Department of the City of Indianapolis, has in their possession specific information and/or evidence, which is relevant, germane and pertinent to the Defendant's defense herein, either as an affirmative defense or as impeachment evidence, namely, the names and addresses of the State's witnesses and/or the names and addresses of alleged eye witnesses and/or eye witnesses who can identify the Defendant herein as being the participant in the crime charged against him in this cause.

2. Defendant, by Counsel, would further respectfully show this Honorable Court that he has just cause to believe and does believe that numerous other persons were arrested for the crime charged against the Defendant herein, and that the State of Indiana has the names and addresses of said witnesses, and that said witnesses were either inter-rogated or held for interrogation by the prosecuting author-

ities in this cause and, further that the State of Indiana has in its possession evidence and/or statements from said persons so arrested, detained, interrogated and questioned which is relevant and material to the defense of your Defendant herein, either as an affirmative defense or impeachment evidence; furthermore, said evidence is beneficial to the Defendant in that the same will show that the testimony of some of the persons named by the State of Indiana as its witnesses that the State of Indiana intends to rely on, gave conflicting testimony and that the testimony was confused, conflicting and contradictory that was given in a hearing heretofore held in this Court on this cause.

3. Defendant further says that he has reason to believe that the State of Indiana has in its possession certain reports of investigations pertinent to this case which would show that the defendant was not and is not the perpetrator of the crime charged herein, which Defendant would like to have made available to him for the purposes aforesaid, or in the alternative, that the Court make an in camera inspection of the complete reports of the investigations made by the police and/or law enforcement officers herein, relative to this case and germane and pertinent to the issue of identity so that the Defendant's rights to a fair and impartial trial are protected.

4. Defendant further says that the State of Indiana has suppressed and/or has failed to disclose at the preliminary hearing aforesaid in this Court, certain evidence favorable to the Defendant herein with reference to identity, the time of the crime, the names and addresses of all the witnesses the State of Indiana is relying upon and/or will rely upon in the prosecution of this cause, as well as certain exculpatory statements secured in the investigation of this case, and the Defendant respectfully moves the Court for an appropriate Order requiring the State to deliver over to Defendant or Defendant's counsel, said information.

5. Defendant further says that the State of Indiana has in its possession certain evidence with reference to the alleged identification of the defendant in a police line up and that said line up was conducted in an illegal and unconstitutional manner with reference to — (a) the supervision of witness or witnesses who saw the line up with reference to the activities of the detectives and police investigating the case in that the defendant was described to the witnesses viewing the line up prior to the line up; and that the police showed the witnesses to the line up a photograph of the defendant and in this case focused attention on the

defendant because of the identification by the photograph prior to the line up; and furthermore, the law enforcement officers connected with the case at bar talked to the witnesses prior to the line up with reference to and concerning the defendant and thus the line up amounted to little more than a show up of one person; and furthermore, in the composition of the line up the physical characteristics of those persons in the line up did not approximate the same as those of the defendant with reference to color, age, weight, height, and as a consequence thereby the line up was no more than a provoked identification through accentuation of the presence of the defendant herein, in contravention of *United States* v. *Wade*, 388 U. S. 218, particularly where the defendant had counsel and counsel was not advised of the line up and was not notified of the same, and was not present during the same; furthermore, the procedure involved in said line up violated the pronouncements of the United States Supreme Court in *Gilbert* v. *State of California*, 388 U. S. 267 concerning the absence of counsel and the defendant's 6th Amendment rights to counsel at said line up, all of which is highly prejudicial to the defendant here. The defendant respectfully prays the Court for an appropriate Order made by the officers conducting the line up and the statements taken by the police officer making the line up and the addresses and statements both written and oral of the person viewing the line up and that the same be made available to the defendant herein.

WHEREFORE, Defendant, by Counsel, respectfully prays this Honorable Court for the above requested information now in possession of the State of Indiana by reason of the dictates of *Brady* v. *Maryland*, 373 U. S. 83."

August 20, 1968, the State of Indiana filed its answer to appellant's Notice of Alibi, such answer in substance stated "the date when the defendant committed the offense charged States Supreme Court in *Gilbert* v. *State of California*, 388 was: between 6:00 P.M. on March 14th, 1968, and 6:00 A.M. on March 15th, 1968," and the "place where the defendant committed the offense charged was: in the vicinity of 22nd Street and College Avenue, in the City of Indianapolis, Marion County, Indiana."

August 21, 1968, the court sustained a part of appellant's Motion for Disclosure, etc., and ordered the "Prosecutor's Office to furnish names and addresses of witnesses to the defend-

ant on or before August 23, 1968." Thereupon the defendant filed a waiver of trial by jury and requested an early trial.

October 4, 1968, the issues herein were submitted to the court for trial finding and judgment. On the same day the court found defendant guilty as charged by the indictment, ordered a pre-sentence investigation and set sentencing for October 17, 1968. On October 17, 1968, a pre-sentence investigation reported was filed, and sentencing was continued at the request of defense counsel.

On October 24, 1968, appellant filed his Motion for New Trial, which motion, omitting heading, reads as follows:

"Comes now the Defendant in the above entitled cause, by Counsel, and respectfully moves the Court for a new trial herein upon the following grounds and for the following reasons, to-wit:

1. Irregularity in the proceedings of the Court and orders of the Court and abuse of discretion by which said Defendant was prevented from having a fair and impartial trial in this, to-wit:

(a) The Court erred in overruling the major portions of Defendant's Motion For Disclosure and Production of Evidence Favorable To Accused.

(b) The Court erred in refusing to order the State to disclose all evidence and information in its possession which was favorable and beneficial to accused which request was made by the Defendant in his Motion For Disclosure and Production of Evidence Favorable To Accused.

(c) The Court erred in not sustaining In Toto, Defendant's Motion For Disclosure and Production of Evidence Favorable To Accused.

2. Newly discovered evidence, materal to the Defendant, which he could not, with diligence have discovered and produced at the trial, all as shown by the Affidavit of Charles Carter, whose Affidavit is attached hereto, made a part of this motion, and for identification, marked Exhibit 'A'.

3. The finding of the Court is contrary to law.

4. The finding of the Court is not sustained by sufficient evidence.

WHEREFORE, the Defendant, Carrie Douglas, by Counsel, respectfully prays the Court that he be granted a new trial herein."

Exhibit A attached to the above motion, omitting heading reads as follows:

"Charles Carter, being duly sworn upon his oath, deposes and says:

On March 27, 1968, me and the defendant, Carrie Douglas, went to the Shop-Rite Supermarket on 22nd and College to get some personal belongings where we saw Lavene McCoy. She approached us and asked me could I loan her $2.00 to buy food. I told her I didn't have any money but maybe Mr. Douglas had. He told her he did have a couple dollars, but he needed it, but if she could pay it back he would be glad to loan it to her. She told Mr. Douglas that she didn't have any money at the present and didn't have a job, but her kids were at home and she needed the money for food and milk, so Carrie gave her $2.00 and some change, and she told him to stop out at her house. I don't remember the exact address but it was somewhere on Broadway. She purchased the items she came for. This was after Carrie Douglas had given her the money.

In the car going back towards his house I asked Mr. Douglas had he ever seen her before and he told me 'no'. This particular woman later filed a criminal charge against Mr. Douglas as being raped on March 14, 1968, and this incident happened on March 27, 1968. To my knowledge he had never seen this woman before and she had never seen him.

If I had been available for trial I would have testified to the above, but I was not subpoenaed because I was incarcerated in the Marion County jail and could not have of my own volition appeared in Court.

If Carrie Douglas is granted a new trial I will testify substantially to the above statement.
Further affiant sayeth not.

|  | /s/ Charles Carter |
| Ex. 'A' | Charles Carter |

Subscribed and sworn to before me, a Notary Public this 9th day of October, 1968.

R. Martin Worrell
Notary Public

My Commission expires:
8-11-70"

On November 4, 1968, defendant's Motion for New Trial was overruled.

On November 7, 1968, the following further proceedings were had herein to-wit:

"Come now the State of Indiana by Val Boring, Deputy Prosecutor; Defendant Douglas in person and by counsel William Erbecker. The Court having examined the Pre-Sentence Investigation Report heretofore filed by the Probation Department, now asks the Defendant if he has any legal cause or reason why Judgment should not be pronounced and sentence imposed on the finding of Guilty heretofore entered and the Defendant having none, the Court now sentences the Defendant Douglas, age 23, to the Indiana State Reformatory for Fifteen (15) years and costs.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Defendant be and hereby is, sentenced to the Indiana Reformatory for not less than Fifteen (15) years and costs."

Thereafter, appellant filed his petition to appeal in Forma Pauperis, requesting appeal counsel "and all other further, proper and complete relief necessary in the application of and/or the taking of a Pauper appeal to the Supreme Court of Indiana." On December 16, 1968, the petition was granted and present appeal counsel was appointed for such purpose.

On February 24, 1969, defendant *pro se* filed a Verified Motion to Vacate Judgment and Request for Leave to File Same Without Costs or Filing Fees, such motion, omitting heading, signatures and jurat reads in pertinent part as follows:

"To THE HONORABLE JOHN T. DAVIS, OF THE ABOVE ENTITLED COURT:

Comes now, Carrie Douglas, who bears the registration number 50825 at the Indiana State Reformatory, and fully aware of his rights under the Indiana Constitution and namely the Indiana State Statutes, now moves this Honorable Court to Vacate said Judgment for the following separate and several reasons, in this; to wit:

-1-

That petitioner is a citizen of these United States of America, in the State of Indiana, and is now illegally and unlaw-

fully restrained of his liberty by the Superintendent of the Indiana State Reformatory, located at Pendleton, in the said County of Madison.

## BRIEF

1.

Defendant was arrested April 25th, 1968, and thereafter charged with the crime of Rape while armed. He was later charged in another indictment on an additional charge of Rape, to which he entered a Not Guilty plea on each occasion. The alleged victim, made statements to the effect that the police officer assigned to the case had told her what to say. She made additional statements to the effect that she had attended school with the defendant in 1967, when the records clearly show that defendant finished same in 1964. She also said that she identified the defendant only from a photograph, which she later admitted she could not confirm for the record.

2.

It was also made plain in the second indictment in which the defendant is charged with a similar crime, that he could not have been the same person; inasmuch as the weapon which was supposedly used was never even viewed by the defendant until the 30th day of March, 1968, some two weeks after the alleged attack took place. This too has been made a part of the record in these proceedings.

It is also a part of the record in these proceedings, that the defendant was shown on a Police Line Up wherein he was the only subject to be viewed at that time.

## ARGUMENT

The defendant-Prisoner has definitely stated a claim upon which relief can be granted. The sentences which the defendant received are wholly contrary to law, as set out in the Indiana Code of Criminal Procedure. It is also commanded by Article I, Section 12 of Indiana Constitution as follows:

All courts shall be open; and every man, for injury done to him * * * shall have remedy by due course of law. Justice shall be administered * * * completely, and without denial * * * Also see; Article I, sec. 23 of the Indiana Constitution, and also the equal protection clause of the 14th amendment of the Constitution of the United States. Also citing, Article I, sec. 27, of the Indiana Constitution.

## CONCLUSION

It is obvious that petitioner's conviction and present incarceration has been reduced to a travesty of justice, inasmuch as his defense has conclusively shown his innocence. Petitioner has been aided by the Notre Dame School of Law in seeking this emergence of Justice and nothing more. Wherefore, the petitioner prays that this Honorable Court will Vacate said Judgment, pursuant to the statutes as in such cases made and provided, so that this petitioner may be forthwith brought before this Honorable Court, to do, and to submit to and receive what the law may require."

On Monday, March 24, 1969, the court overruled the above motion.

The Assignment of Errors is:

"1. The trial court erred in overruling Appellant's motion for a new trial.

2. The trial court erred in overruling Appellant's verified motion to vacate judgment."

A summary of the evidence most favorable to the appellee is taken from appellee's brief pages 2-4 inclusive and reads as follows:

"The witness for the State was Luvenia McCoy, the victim of the rape. She is a 27 year old female, unmarried, is not nor ever has been married to the appellant (Tr. p. 75, ll. 1-7). On March 14, 1968, she worked at the Methodist Hospital during the hours of 3 p.m. to 11:30 p.m. She arrived home from work, then left to go to the closed filling station for some 'pop' from an outside vending machine (Tr. p. 75, ll. 8-22). As she was leaving, Appellant walked up to her, pulled a gun from a holster, and ordered her, at gunpoint, to walk to and enter a station wagon parked on the filling station lot (Tr. p. 75, l. 24 to Tr. p. 76, l. 11). Inside the station wagon, he told her to remove most of her clothing at gunpoint (Tr. p. 76, ll. 12-21), whereupon he had sexual intercourse with her (Tr. p. 77, ll. 5-14). * * * Later he repeated the act (Tr. p. 91, ll. 16-18), and then caused her to commit oral sodomy (Tr. p. 91, ll. 21-27).

She never consented to his doing these things and tried to push him off while he was lying on top of her (Tr. p. 92, ll. 22-27); (Tr. p. 93, l. 1). As he was preparing to engage

in sexual intercourse again, she escaped by slipping out the door while he was looking for the gun she had dropped out the window (Tr. p. 101, ll. 1, p. 102, 1.19), rans to her home and called the police who took her to the hospital for treatment (Tr. p. 104, ll. 4-25).

Later that day, she went to police headquarters and looked at pictures (Tr. p. 113, ll. 1-4; Tr. p. 208, ll. 22-209, l. 8). Then on three occasions, the police officer assigned to the investigation took a number of pictures to her home. On the third visit, she selected his picture from a group of ten to fifteen pictures (Tr. p. 211, ll. 14-23). She was not influenced in her identification of the picture of the Appellant (Tr. p. 124, ll. 8-12; Tr. p. 119, ll. 19-24; Tr. p. 115, ll. 14-27; Tr. p. 110, l. 26 to p. 111, l.4; Tr. p. 128, ll. 6-15) and she was positive he was the one who raped her. Her recollection was based solely on the opportunity she had to observe him while he was with her. (Tr. p. 106, l. 24 to Tr. p. 107, l. 1; Tr. p. 110, ll. 18-25; Tr. p. 124, ll. 13-24; Tr. p. 140, l. 21 to p. 141, l. 3; Tr. p. 143, ll. 13-16).

She identified his picture on April 24, 1968, and on this basis he was arrested on April 24, 1968 (Tr. p. 210, ll. 3-11). The second time she went to the police headquarters was at the request of the officer in charge of the investigation. The reason her presence was required was to testify in the 'Probable Cause Hearing' if necessary (Tr. p. 221, ll. 6-17). The officer in charge did not know the Appellant would be in the 'show-up' at police headquarters (Tr. p. 218, ll. 13-15; Tr. p. 219, ll. 1-2) until he was told by Appellant's attorney that Appellant had signed himself out of the hospital (Tr. p. 220, ll. 16-19). This action, under procedural practice, put Appellant into the 'show-up' before his court appearance (Tr. p. 219, l. 14-221, l. 5).

The 'line-up' was an identification parade. There were about 50 men in the line-up (Tr. p. 222, ll. 23-24). The line-up is made up of those prisoners scheduled for court appearances that morning (Tr. p. 222, ll. 17-18). There was no evidence of a line-up picture or a line-up identification form being made in conjunction with this 'line-up'. The only picture in question at the trial was the 'mug shot' picture which was used for identification by the police, and it was given to Appellant's counsel upon request. (Tr. p. 125, l. 7 to p. 126, l. 21)."

Ground One of appellant's Motion for a New Trial alleges irregularities in the proceedings of the court and abuse of

discretion by which defendant was prevented from having a fair and impartial trial.

This first specification is broken down into three catagories, 1 (a), (b) and (c). As the motion for new trial is heretofore set out in full these specifications are here deemed sufficiently descriptive.

The writer finds difficulty in harmonizing appellant's arguments at (C) page 14 of his brief and (D) page 16 thereof and at the risk of unduly extending this opinion incorporates said points.

> "C. Failure to Order Additional Pre-Trial Disclosures and Production of Evidence Favorable to Defendant-Appellant.

> (MOTION FOR NEW TRIAL—No. 1 a, b, c)

> At the appropriate time—namely, prior to trial, the defendant-appellant moved the trial court to order the State of Indiana to disclose, produce and make available certain evidence then in the possession of the State of Indiana that would assist the 'fact finder' to determine the issue of the defendant-appellant's guilt or innocence of the crime charged by the Indictment. A portion of that timely filed motion was based upon appellant's justifiable belief that numerous other persons had been arrested for the crime charged against the appellant. The State of Indiana had the names and addresses of such persons and either interrogated them or had held them for interrogation. The State also had in its possession evidence and statements from such persons so arrested, detained, and interrogated that was both relevant and material to the appellant's ultimate defense. That evidence might have served as an affirmative defense or as impeachment evidence, and it would most certainly have demonstrated the confusion, conflict, and contradiction of testimony given at the 'probable cause hearing.'

> The disclosure and production of such evidence, then held by the State of Indiana, would have shown that the defendant was not and is not the perpertrator of the crime charged herein. The defendant very carefully and properly offered the Trial Court to make an *in camera* inspection of the complete reports of the investigations made by the police or other law enforcement officers, relative to this case and germane and pertinent to the issue of identity so

that the appellant's rights to a fair and impartial trial might have been preserved. *Brady* v. *Maryland* (1963), 373 U. S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.

The suppression by the prosecution of evidence favorable to and requested by an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. See *Brady* v. *Maryland, supra.*

With further, but equal caution, the appellant, by his pretrial Motion, asked that the State of Indiana be ordered to disclose certain exculpatory statements secured in the investigation of this case so that Defendant (or Defendant's Trial Counsel) might have such information and not have to operate in a vacuum so as to preclude the administration of equal justice. *White* v. *State* (1955), 234 Ind. 193, 125 N. E. 2d 442; *Crawford* v. *Anderson* (1891), 129 Ind. 117, 28 N. E. 314.

D.   Improper Line-Up Identification Procedure

(MOTION FOR NEW TRIAL—No. 1 a, b, c, AND VERIFIED MOTION TO VACATE JUDGMENT)

Appellant submits that recent decisions have indicated that an accused has a right to counsel at an 'Identification Parade' or 'Show Up'. *U. S.* v. *Wade* (1967), 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149; *Gilbert* v. *California* (1967), 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed 2d 1178.

Appellant further submits that the *Wade* and *Gilbert* decisions apply to the facts in the instant case. The appellant has not waived this objection. Appellant is not asking this Court to weigh evidence, but he is merely asking this Court to note the insufficiency of the record to sustain what must necessarily be the State's position on this point. The record affirmatively shows timely objections at all stages of the instant proceeding."

Appellant's argument under specification C relative to 1 (a), (b) and (c) is predicated on *Brady* v. *Maryland* (1963), 373 U. S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.

As far as the record discloses the court ordered the Prosecutor's office to furnish the defendant with the names of the State's witnesses by August 23, 1968. This was in response to defendant's motion above referred to. The record is silent as to any complaint by defendant that the State did not comply with the order so made.

This Court has previously held "We do not require that the State lay bare its case in advance of trial nor that the criminal defendant be allowed a fishing expedition * * *." *Howard* v. *State* (1969), 251 Ind. 584, 244 N. E. 2d 127, 128; *Bernard* v. *State* (1967), 248 Ind. 688, 230 N. E. 2d 536, 540.

Appellant saw fit to call to the stand as a witness Sergeant Lund the police officer in charge of the investigation in this case. That witness was examined thoroughly by the defense. His testimony covered the period of time from the rape to the trial, it did not disclose or even hint at any suppressed evidence. We are of the opinion appellant received under specification C (1 a, b and c) all that he was entitled to receive by the motion under our own decisions, as well as by *Brady* v. *Maryland, supra.*

With respect to specification D page 16 of appellant's brief, while we have taken the trouble to search the record and have heretofore set out herein appellant's Motion for Disclosure, etc., we are not impressed by his argument. The State asserts, properly we think, that appellant has not properly preserved for appeal the ground of "improper police line-up." This was not a ground presented to the trial court in appellant's motion for new trial. Paragraphs 3 and 4 thereof cannot be construed to present this ground because of the prescription against the use of such general language in Supreme Court Rule 1-14B, which was in existence at the time this appeal was filed. Said rule requires a memorandum stating specifically where the evidence is insufficient or the verdict is contrary to law. No such memorandum can be found in the record, and, therefore, this ground for appeal has been waived. *Lynch* v. *State* (1969), 252 Ind. 54, 245 N. E. 2d 334.

In support of his contention appellant contends an accused has a right to counsel at an "Identification Parade" or "Show-Up". *U. S.* v. *Wade* (1967), 388 U. S. 218, 87 S. Ct. 1926, 18

L. Ed. 2d 1149; *Gilbert* v. *California* (1967), 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178.

We adopt the argument of the appellee as follows:

"Assuming that Appellant had preserved and properly presented his argument, what would be the effect? There was no motion, in the instant case, to strike the courtroom identification of the witness as there was in *Wade*. Counsel made no argument nor objected that the identification of Appellant by Miss McCoy was 'tainted'. *Wade* said that the government must first be given the opportunity to establish by clear and convincing evidence that the identification was based upon observation other than the line-up. *Gilbert* indicated that the State could establish that the in-court identification had an independent source.

In the case at bar, the identification of the Appellant by the victim, Miss McCoy, was positive and she had no doubt that it was he who raped her. Her observation of him during the attack was her only basis for recognition. It was clear that she picked out his picture from a group of 10 or more pictures, after having looked at hundreds, and she said to the police officer 'this is him' and she was positive (Tr. p. 115, 11. 7-27). The police officer did not influence her choice (Tr. p. 119, 11. 19-24). She picked out his picture, it was not 'shown' to her (Tr. p. 128, 11. 10-25). She had opportunity to observe, and did observe him during the attack (Tr. p. 133, 1. 20 to p. 134, 1.2). The Appellant was arrested as a result of the victim's positive identification of his picture (Tr. p. 219, 11. 9-11).

Moreover, Appellant's defense counsel conducted an extensive examination of Sergeant Lund regarding the 'line-up'. Sergeant Lund testified that it was a matter of regular procedure for all prisoners appearing in court to go through the 'line-up' for the purpose of permitting the whole detective force to review the prisoners for recognition. He did not know that the Appellant would be in a 'line-up' until that morning (Tr. p. 220, 11. 1-5).

Further, Appellee contends that it is not clear that Appellant was denied his rights to have counsel at the 'line-up'. When Sergeant Lund arrested the Appellant, he warned him of his rights; Appellant refused to sign a waiver of rights requested by Sergeant Lund (Tr. p. 208, 11. 5-15), but there is no evidence he requested his counsel be present at the 'line-up'. That he had counsel at this time is not clear from

the record, but Appellee submits that he was represented by one Gordon Davis, a member of the Indiana Bar. Gordon Davis filed an appearance card in this cause on June 20, 1968 (Tr. p. 9). He represented the Appellant at the initial hearing on April 25, 1968, which is also the date of the line-up (Tr. p. 226, 1. 16; p. 227, 1. 10). Sergeant Lund testified that Davis called him and told him that the Appellant had signed himself out of the hospital (Tr. p. 220, 11. 6-19). Sergeant Lund also testified that Davis had been around the police station a long time, he presumed Davis knew of the regular 'line-up' procedure and assumed Davis would be at the 'line-up', therefore, no formal notice was given (Tr. p. 222, 11. 4-18). Upon questions by the court, Sergeant Lund made it clear that he had talked to Gordon Davis before the 'line-up' and that he was informed that the Appellant had signed himself out of the hospital. (Tr. p. 230, 11. 7-10)."

Assuming, arguendo, that appellant had preserved and properly presented as a ground that the "line-up" procedure was improper, there is nothing in the record to indicate that the in-court identification of appellant by the victim was based on anything other than her recognition of him from the time of the rape.

Ground 2 of appellant's motion for a new trial is predicated on alleged newly discovered evidence which he could not have discovered and produced at the trial and shown by the affidavit of one Charles Carter. As we have heretofore set out the motion for new trial and the affidavit of the defendant they are not here copied.

The appellee points out that appellant has failed to comply with old Rule 2-17 (e) and Rule 2-17 (h) of this Court. The State further points out that appellant's motion for new trial was signed by counsel and not appellant and is unverified. Thus there is no affidavit showing diligence in discovering such evidence in the case at bar. The affidavit of Charles Carter showed he was in jail in Marion County, Indiana, at the time of trial and within the jurisdiction of the court.

The affidavit shows that the "evidence" concerns activity in which the appellant participated. Appellant makes no showing

he did not know such evidence existed, or that he did not know the whereabouts of the affiant at the time of trial.

A motion for a new trial on the ground of newly discovered evidence which fails to state the precise nature of the evidence, does not state facts showing why such evidence was not presented at trial, and is not accompanied by an affidavit showing diligence to discover it presents no question to the court. *Lake* v. *State* (1967), 248 Ind. 451, 229 N. E. 2d 724.

In the case at bar the State of Indiana presented one witness only, the victim of the alleged rape.

The defendant took the stand in his own behalf and testified that he had seen the prosecuting witness, Luvenia McCoy, prior to the night of March 14, 1968. He testified that she lived right down the street from him for about a year and that he saw her often, had a speaking acquaintance with her, and on or about April 8, 1968, he, Gypsy Morton, the prosecuting witness, and Harold Mayfield were all talking in front of a liquor store at Twenty-Second and College. She did not at that time make any claim, statement or accusation that he had raped her. The defendant categorically denied putting a gun on Luvenia McCoy on March 14, 1969, (this is error as the alleged rape occurred in 1968 and later questions to defendant clearly show his attorney meant the date *March 14, 1968*), denied raping her, denied forcing her to commit sodomy on him, and denied being in an automobile with her when she threw a gun out the window. Defendant testified he was a married man whose family consisted of a wife and four kids. He also testified he was the same person convicted in the same court of an unrelated charge in another cause of a felony while armed, to-wit: Rape. He further testified he had never owned a gun prior to March 30, 1968, on which date he was arrested and charged with violation of the firearms act. Defendant further testified he went to work March 14, 1968, on the "B" shift at Citizens Gas; he also testified that the

prosecuting witness never said or claimed that he tried to attack her until after April 18, 1968, when he got shot, and that it was after he got shot that all the other charges were filed against him. Defendant also testified the rape of which he had previously been convicted was supposed to have occurred on March 16, 1968. When asked if he had seen any other ladies on the fifteenth he testified "I don't know, it depend on how many rape charges he got against me 'cause when he first come to the hospital and arrested me, he say he had seven.'" When asked how he happened to get shot he said "A lady was shooting at my nephew," and "She hit me by accidental." "She was close when she shot cause my nephew slapped her." The defense also produced as a witness defendant's half brother, Robert Dotson, who testified as to his brother's purchase of a gun on the night of March 30, 1968, and his subsequent arrest the same night on a charge of carrying a concealed weapon.

Thereafter, the defense rested, the State rested and the defense moved to reopen in order to put Sergeant Lund on the stand as a defense witness. The motion was granted and the Sergeant testified at length about all aspects of the case.

There was sufficient evidence to sustain appellant's conviction of the crime of Committing a Felony (Rape) While Armed with a Deadly Weapon. Burns Indiana Statutes 10-4709 provides:

"Any person, who being over 16 years of age, commits * * * the crime of rape * * * while armed with a pistol * * * or any other * * * dangerous weapon * * * shall be guilty of a felony * * *."

Burns Indiana Statutes 10-4201 reads in part as follows:

"Whoever has carnal knowledge of a woman forcibly against her will * * * is guilty of rape * * *."

The general rule is that a conviction will be sustained if there is any evidence of the facts essential to support the judg-

ment. *Bush* v. *State* (1968), 251 Ind. 84, 237 N. E. 2d 584. When the question of the sufficiency of the evidence is raised the Supreme Court will consider all that evidence most favorable to the State together with all the reasonable inferences to be drawn thereform. *Fisher* v. *State* (1966), 247 Ind. 529, 219 N. E. 2d 818.

In conclusion we do not say if this case had been before the Court *de novo* the same result would obtain. In the case at bar there is conflicting evidence and varying degrees of interest on the part of the witnesses, all of which are matters for determination by the trier of the facts who has the opportunity to observe the witnesses, hear the evidence directly, and through such observation, evaluate the weight thereof and the credibility of the witnesses far more effectively than we through the cold record of the transcript. We concede and acknowledge the possibility that, where the judgment of conviction stands on the uncorroborated evidence of the complainant or alleged victim, alone, a defendant might be "shopped" or "framed" or an innocent man unjustly convicted. On the other hand crimes of violence such as murder, rape or attempts to commit the same seldom take place in broad daylight, in public places, in plain view of numerous spectators or potential witnesses and as a matter of public policy the courts must and have decided which horn of the dilemma constitutes the greater threat and hazard to our society. In this state this Court has held that the uncorroborated testimony of the victim is sufficient to sustain the judgment of conviction. *Grimm* v. *State* (1970), 254 Ind. 150, 258 N. E. 2d 407.

We are of the opinion there was sufficient evidence of probative value to sustain the judgment of the trial court and the trial court committed no reversible error.

The judgment is affirmed.

Hunter, C.J., Arterburn and Givan, JJ., concur. DeBruler, J., concurs in result.

NOTE.—Reported in 261 N. E. 2d 567.