JOHN W. ARNETT *v.* STATE OF INDIANA.

[No. 3-872A48. Filed January 10, 1973. Rehearing denied February 28, 1973. Transfer denied June 5, 1973.]

*Wilson E. Shoup*, Angola, for appellant.

*Theodore L. Sendak*, Attorney General, *Harry Sauce, III*, Deputy Attorney General, for appellee.

SHARP, J.—Appellant was charged with and convicted of assault and battery with intent to commit rape and sodomy. On the assault and battery with intent to commit rape charge appellant was sentenced for not less than one year nor more than 10 years. On the sodomy charge he was sentenced for not

less than two years nor more than 14 years and fined $100.00. From this sentence the appellant appeals and argues four propositions which we consider.

## I.

At the time of sentencing the trial court had before it the Probation Officer's presentence report which it had previously ordered prepared pursuant to IC 35-8-1-2, Ind. Ann. Stat. § 9-2252 (Burns 1969). Under that statute a sentencing court is required to have prepared and consider a pre-commitment investigating report prior to commitment of a defendant who has been convicted of a felony. The defendant certainly had been so convicted in this case. If this statutory mandate is not followed, a judgment and subsequent order of commitment entered thereon will be vacated. *Ware* v. *State* (1963), 243 Ind. 639, 189 N.E.2d 704.

The precise question which the appellant attempts to argue here was disposed of adverse to him in *Carlin* v. *State* (1970), 254 Ind. 332, 259 N.E.2d 870. *Carlin* remains a binding precedent on this court.

## II.

The appellant contends there was insufficient evidence of intent to commit rape upon the victim beyond a reasonable doubt. In this regard it is elementary that on appeal we will not weigh the evidence nor determine credibility. We will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom to determine if there is substantial evidence of probative value from which the trier of fact might reasonably infer guilt beyond a reasonable doubt. If there is such evidence, a conviction must be sustained. *Capps* v. *State* (1972), 258 Ind. 565, 282 N.E.2d 833 and *Asher* v. *State* (1969), 253 Ind. 25, 244 N.E.2d 89.

The evidence most favorable to the State on the issue of

intent to commit rape comes from the mouth of the victim as follows:

"A. ". . . I had picked up my cigarettes and started to take a cigarette out to light it when he grabbed me.

Q. Would you describe to the Court how he grabbed you?

A. He—the nearest I can remember—he put his arms right around me and pulled my one arm behind my back, and when he did my cigarettes went all over the floor and the lighter flew across the table and landed on the chair across the table.

Q. What did he do next, if anything?

A. He told me that he would kill me if I screamed and he wanted some money. I told him we didn't have any money, and he said, 'I -ant some pussy'. And I said, 'You don't want to do that', and it made him mad and he hit me.

Q. Would you describe to the Court, please how he hit you?

A. That I don't know for sure, because it knocked me out. I don't know—I'm not sure on that part, and when I went down it upset everything on the TV. And when I came to I was sitting on the floor, and my head was roaring and my female organs burned like fire. And I couldn't figure out for the life of me what I was doing sitting on the floor. And I happened to look up and he was standing right over me, and he reached down and took ahold of me and pulled me up twisting my arm behind my back and he said, 'Lady,' he said, 'I'll kill you. You just had a sample of what I'll do. Now, I want some pussy,' and he said, 'You're going to suck me', and he took ahold of me and pushed me into the living room. And I said, 'You don't—he said, 'Get on your knees,' and I said, 'You don't want to do that,' and it made him mad and he hit me and I went down and I went into the coffee table and it knocked the coffee table into the davenport and the davenport back against the wall. He reached down and took ahold of me and pulled me up twisting my arm behind my back, and he said, 'Lady, get on your knees, you're going to suck me', so, I got on my knees, he unfastened his pants and took out his penis and made me suck him while he held my head. And I don't know how long this lasted. Finally, he said, 'Get up and lay down in that chair, I want some pussy', and I said, 'I have a growth', he said, 'Show me', so I pulled back the edge of my pajama

legs and I showed him. He said, 'All right, but you get back down on your knees, you're going to suck me again', so I got back down on my knees, and all I could think of was how am I going to get out of this alive. . . ."

To prove the crime of assault and battery with intent to commit rape it is not necessary for the act of rape to have actually been consumated, only that there was conduct by the accused from which the trier of fact might reasonably and logically infer the element of intent. *Washington* v. *State* (1971), 257 Ind. 40, 271 N.E.2d 888. In *McIntosh* v. *State* (1970), 254 Ind. 484, 260 N.E.2d 775, our Supreme Court held that intent is a "mental function" which is not readily determined with absolute certainty. The trier of fact may examine the surrounding circumstances as disclosed by the evidence in a particular case and an inference of intent may be determined "from a consideration of the conduct and natural and usual sequence to which such conduct logically and reasonably points." In this case we need but refer to the violent conduct and accompanying words to find a proper inference of the intent to commit rape on this victim.

### III.

The appellant next contends that Acts 1905, Ch. 169, § 473 as found in Ind. Ann. Stat. § 10-4221 (Burns 1956), IC 35-1-89-1 is unconstitutionally vague and uncertain.

As a preliminary we should emphasize that we are not here required to determine or consider the constitutional question raised as to certain acts which are in violation of the sodomy statute when engaged in by consenting adults. That issue was involved in *Cotner* v. *Henry* (7th Cir. 1968), 394 F. 2d 873.

We must deal with the vagueness and indefiniteness question in the light of the charge and facts of this case. The sodomy statute has been often challenged but has generally survived.

The most recent word from our Supreme Court is in *Miller* v. *State* (1971), 256 Ind. 296, 268 N.E.2d 299 and *Dixon* v. *State* (1971), 256 Ind. 266, 268 N.E.2d 84. See also, *Phillips* v. *State* (1967), 248 Ind. 150, 222 N.E.2d 821 and *Estes* v. *State* (1964), 244 Ind. 691, 195 N.E.2d 471.

The Indiana General Assembly apparently intended that all human acts which might be covered in the definition of "crime against nature" be proscribed by the statute. *Murray* v. *State* (1957), 236 Ind. 688, 143 N.E.2d 290. To further read the legislative intent through *Murray* this State recognized that sodomy was multifarious in meaning and such a statute by necessity must be broad rather than narrow in scope.

The *Murray-Dixon-Miller* trilogy represents recent and binding precedents on the constitutional question raised here and demand that appellant's arguments be rejected.

## IV.

Lastly, it is argued that this conviction cannot be sustained on the uncorroborated testimony of the victim. The appellant here suggests that the victim should have had a psychiatric examination to determine her credibility as a witness prior to trial. Our Supreme Court has categorically rejected the appellant's demand in this regard. See *Wedmore* v. *State* (1957), 237 Ind. 212, 143 N.E.2d 649, which held that the trial court had no authority to require the State to support the testimony of the prosecutrix with a psychiatric report of her competency in order for her uncorroborated testimony to be sufficient evidence to sustain a conviction for a sex offense. *Easterday* v. *State* (1970), 254 Ind. 13, 256 N.E.2d 901, seems to place *Wedmore* in perspective by conferring discretion on the trial judge who did not abuse such discretion in this case.

It is well established in Indiana that a conviction of a sex offense may be sustained upon the sole uncorroborated testi-

mony of the victim (prosecutrix). *Yeary* v. *State,* 257 Ind. 159, 273 N.E.2d 96, *Wilhoite* v. *State* (1971), 255 Ind. 599, 266 N.E.2d 23 and *Douglas* v. *State* (1970), 254 Ind. 517, 261 N.E.2d 567.

None of the four contentions of the appellant are well-founded and therefore, the case should be and hereby is affirmed.

Hoffman, C.J. and Staton, J., concur.