Robertson, P.J. and Lowdermilk, J., concur.

ROBERT J. SHULTZ, JR. *v.* STATE OF INDIANA.

[No. 3-572A7. Filed January 29, 1973.]

*Leo J. Lamberson,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Harry L. Sauce, III,* Deputy Attorney General, for appellee.

STATEMENT OF THE APPEAL

STATON, J.—Robert Joseph Shultz, Jr. was charged by affidavit with assault and battery upon his fifteen year old daughter with the intent to gratify sexual desires.[1] The forty-four year old Robert Joseph Shultz, Jr. waived formal arraignment and pleaded not guilty. He was tried by court and found guilty on January 14, 1972. The trial court sentenced him on February 16, 1972 to the Department of Correction for a period of not less than one nor more than five years. Sufficiency of the evidence to sustain the conviction is the only alleged error raised by the motion to correct errors and brief of Robert Joseph Shultz, Jr.

We have reviewed the entire record of the evidence, and we have concluded in our opinion which follows that there was sufficient evidence to sustain the conviction. Our opinion affirms the judgment of the trial court.

STATEMENT OF FACT: Robert Joseph Shultz, Jr. is a widower who had worked as a service station mechanic in South Bend, Indiana. Three daughters and a son lived at home. On Sunday, August 1, 1971, Robert Joseph Shultz was returning from Niles, Michigan where he had been visiting a married daughter. Fifteen year old Mary Louise Shultz, her two sisters and their overnight guest had made the trip to Niles with Robert Shultz, Jr. and were returning with him some five hours later to South Bend, Indiana. When they arrived at their duplex home that evening at approxi-

---

1. IC 1971, 35-1-54-4; Ind. Ann. Stat. § 10-403 (Burns 1972 Supp.)

mately 10:00 o'clock P.M., Robert Joseph Shultz, Jr. called his fifteen year old daughter, Mary Louise, into his bedroom. She testified as follows:

"Q. And what happened on your arrival home?

"A. My father had gone in to his bedroom, and Debra and Christine and I was in the bathroom washing, getting ready for bed. My dad called me in to his bedroom and told me (starting crying).

"Q. Take your time. (She is given a tissue and water.)

"A. He told me to undress and get in his bed, and I told him I was not going to, and he kept repeating I was going to. I told him maybe his daughter had to do a lot of things he said but this was one of the things I told him I did not have to do. He said 'Yes, you do.'

"Q. Well then what happened.

"A. He told me to go in the bathroom and wash myself and come back in stripped and get in his bed. I kept telling him I was not going to. I started to get up, leave, and he pulled me back, pinned me down on the bed with his arm and began feeling me.

"Q. Where did he feel you?

"A. On my breasts.

"Q. What happened then?

"A. And he unhooked my brassiere and started feeling me more, and then he pulled me on the bed and he un-hooked my brassiere and tried to unbutton my shorts. I kept trying to, you know to put my hands over so he couldn't and he took my hands and put them between his knees.

"Q. How did he do this?

"A. He was pulling me and I was more or less sliding to the side of the bed, trying to get off.

"Q. Where was he?

"A. Sitting on the bed. And then he tried to unbotton [un-button] my shorts when my hand was between his knees. I jerked loose, tried to get away, and he jerked my hands back, put them down, and unbuttoned my shorts, pushed them down to my ankles, some near my ankles.

"Q. What happened then?

"A. And he began kissing me on the breast, worked down to my breasts and he said if I did not hold still he was going to bite my breasts.

"Q. What happened after that?

"A. He told me that he was not hurting me. I told him that he was. And he said 'I am going to make you a woman like I did your older sister when we lived on Bellview Street.'

"Q. What happened then?

"A. I told him I had to go to the bathroom, so I started to pick up my shorts, and he said I did not need them. I took them and went in the bath room and got dressed, and I sneaked to the back door, went around to the back of the house to the other side of the apartment and our neighbor's house, started to climb over the fence and came to the front door and I heard him say something, I don't know what he said. I did not say anything. I looked around the corner, I didn't see him, I jumped over the fence and run to my girl-friend's house and told her mother what happened."

On August 3, 1971, Robert Joseph Shultz, Jr. was charged with the crime of assault and battery with intent to gratify sexual desires. He was tried by court and found guilty.

STATEMENT OF THE ISSUE: The only issue presented by this appeal is whether there was sufficient evidence to sustain the conviction.

STATEMENT ON THE LAW: Robert Joseph Shultz, Jr. contends that the only evidence favorable to his conviction comes from the uncorroborated testimony of his fifteen year old daughter and that it will not sustain his conviction by the trial court. The thrust of his argument relies upon the uncorroborated testimony of his daughter and his own conflicting testimony.[2]

---

2. Robert Joseph Shultz, Jr. has not complied with AP. 8.3(A)(7). The only authority cited in his entire brief is "Hanrahan 141 N.E.2d 143." [Hanrahan v. State (1968), 251 Ind. 325, 330, 241 N.E.2d 143, 146, is a fraudulent check case that reversed the trial court for failing to hear additional evidence on an uncontroverted, verified application for a change of venue. This case further stands for the proposition that: "Each material element of the charge must be proved by substan-

On appeal, this court will consider only that evidence most favorable to the State, together with all reasonable inferences which may be drawn therefrom. *Fuller* v. *State* (1971), 256 Ind. 681, 271 N.E.2d 720; *Lambert* v. *State* (1969), 252 Ind. 441, 249 N.E.2d 502. The conviction will be affirmed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Fuller* v. *State, supra; Taylor* v. *State* (1971), 256 Ind. 170, 267 N.E.2d 383. This court will not weigh the evidence or determine the credibility of witnesses. *Fuller* v. *State, supra; Rusher* v. *State* (1971), 256 Ind. 520, 270 N.E.2d 748; *Sanchez* v. *State* (1971), 256 Ind. 140, 267 N.E.2d 374.

We have examined the evidence most favorable to the State. There is substantial evidence of probative value from which the trial court could have reasonably inferred that Robert Joseph Shultz, Jr. was guilty of assault and battery with intent to gratify sexual desires beyond a reasonable doubt.

In *Tapp* v. *State* (1971), 256 Ind. 422, 426-27, 269 N.E.2d 367, 369, our Supreme Court held in an opinion written by Justice Prentice:

". . . [I]t has long been the law in Indiana that a conviction for rape, incest or assault with intent to rape may be had on the uncorroborated testimony of the prosecuting witness provided such testimony was sufficient to convince the trier of the facts of the defendant's guilt beyond a reasonable doubt."

Also see *Grimm* v. *State* (1970), 254 Ind. 150, 258 N.E.2d 407; *Kuslulis* v. *State* (1930), 201 Ind. 660, 171 N.E. 5; *Woods* v. *State* (1968), 250 Ind. 132, 235 N.E.2d 479; *Yeary* v. *State* (1971), 257 Ind. 159, 273 N.E.2d 96; *Wilhoite* v. *State*

tial evidence of probative value or by reasonable inferences therefrom. *Harris* v. *State* (1967), 249 Ind. 681, 231 N.E.2d 800, 802; *Finch* v. *State* (1967), 249 Ind. 122, 231 N.E.2d 45, 47."] We have examined the entire record as to each element of the crime of assault and battery with the intent to gratify sexual desires, and we will decide the question of sufficiency of the evidence on the merits.

(1971), 255 Ind. 599, 266 N.E.2d 23; *Douglas* v. *State* (1970), 254 Ind. 517, 261 N.E.2d 567.

This court has just recently held in *Arnett* v. *State* (1973), 155 Ind. App. 82, 87, 291 N.E.2d 376, 379, in an opinion written by Judge Sharp that:

"It is well established in Indiana that a conviction of a sex offense may be sustained upon the sole uncorroborated testimony of the victim (prosecutrix)."

The uncorroborated testimony contention of Robert Joseph Shultz, Jr. is without merit.

The judgment of the trial court should be and the same hereby is affirmed.

Hoffman, C. J. and Sharp, J., concur.