GARY COMBS *v.* STATE OF INDIANA.

[No. 3-673A71. Filed November 20, 1973.]

*Howard S. Grimm, Jr., Grimm & Grimm,* of Auburn, for appellant.

*Theodore L. Sendak,* Attorney General, *Larry C. Gossett,* Deputy Attorney General, for appellee.

PER CURIAM—Gary Combs pleaded not guilty to the affidavit which charged him with raping his thirty-eight year old mother-in-law. A jury returned a verdict of guilty, and Gary Combs was sentenced to not less than two (2) nor more than twenty-one (21) years. His motion to correct errors presents these issues for our review on appeal:

ISSUE ONE:    Was there sufficient evidence to support the jury's verdict of guilty?

ISSUE TWO:    Did the trial court err when it refused to tender Combs' Instructions Three (3) and Five (5)?

ISSUE THREE: Did the trial court err in overruling Combs' motion for directed verdict?

Our review of the above issues concludes that no errors were committed by the trial court and we affirm.

ISSUE ONE: We cannot weigh the evidence nor determine the credibility of witnesses in our review of the sufficiency of the evidence. We may only look to the evidence and reasonable inferences flowing therefrom which support the verdict of the jury. The conviction must be affirmed if there is evidence of probative value from which the jury, as the trier of fact, could have reasonably inferred that the Defendant was guilty beyond a reasonable doubt. *McKinley* v. *State* (1972), 258 Ind. 348, 281 N.E.2d 91; *Harris* v. *State* (1972), 258 Ind. 341, 281 N.E.2d 85; *Shank* v. *State* (1972), 154 Ind. App. 147, 289 N.E.2d 315; *Pfeifer* v. *State* (1972), 152 Ind. App. 315, 283 N.E.2d 567.

Combs' mother-in-law had spent the day with her husband celebrating their twenty-first wedding anniversary. It was June 25, 1971. Her husband had to work the third shift and usually left the house around 10:20 o'clock P.M. Mr. and Mrs. Combs lay down in their bedroom about 8:00 o'clock P.M. and went to sleep before Mr. Combs had to go to work. Mrs. Combs had not been awakened when her husband went to work at 10:20 o'clock P.M. There were no lights on in the bedroom when she awakened. Blackout blinds had been installed at the windows to keep out any daylight from the outside. These blinds had been installed since her husband had to sleep during the daylight hours. In pitch darkness, she sensed that someone was in the bedroom. She felt a knife blade at her throat and was asked by a familiar voice if she knew who it was. She answered that she did; it was her son-in-law, Gary Combs. He uncovered her body by throwing the blankets back towards the foot of the bed. His hand moved under her nightgown and up to her underpants. He told her to take off her underpants. She did. He told her that he had been "running around" on Christy, her daughter. On his command, she unbuckled his belt and unzipped his pants. Any hesitation on her part was met with increased pressure of the knife blade on her throat and with the admoni-

tion that, "I mean it." Doug, her eighteen year old son was heard driving his car up the crushed stone driveway next to the house. Combs moved approximately three (3) feet to the window near the bed. He recognized Doug. Minutes later, he left the bed momentarily to lock the bedroom door. After having sexual intercourse with his mother-in-law, he dressed, unlocked the bedroom door and discussed some of his personal problems with her while sitting on the side of the bed. During this bedside conversation, Doug opened the bedroom door to tell his mother that he was home. He did not see Combs sitting on the bed in the darkened bedroom. Being in a hurry, he closed the door and left. Shortly afterwards, Combs walked out of the bedroom into the living room of the house, speaking with his mother-in-law's two sons, and left.

Sufficiency of the evidence of ". . . carnal knowledge of a woman forcibly against her will . . ." is Combs' contention of error for our review. The statute defining rape is IC 1971, 35-13-4-3; Ind. Ann. Stat. § 10-4201 (Burns 1956):

"Whoever has carnal knowledge of a woman forcibly against her will, or of a female child under the age of sixteen [16] years; or whoever being over eighteen [18] years of age, has carnal knowledge of a woman, other than his wife, who is insane, epileptic, idiotic, or feeble-minded, he knowing of such condition; or whoever, being over eighteen [18] years of age, has carnal knowledge of a woman who is an inmate of the woman's prison or the Indiana School for Girls, is guilty of rape, and on conviction shall be imprisoned not less than two [2] years nor more than twenty-one [21] years: . . ."

The mother-in-law testified that Combs told her that he was "high" which she took to mean that he was on drugs. She further testified that he was almost a professional boxer and had taken karate. Combs was very strong and lifted weights. She testified that, ". . . Even my two boys wouldn't be a match for him." Again, she told the jury in her testimony that, ". . . If he hadn't even had a knife and he came at me in the night and told me to do something I wouldn't

argue with him." She didn't want to involve her teenaged son, who was asleep on the couch in the living room. Her testimony to the jury was:

". . . My mind was going ninety miles a hour. I don't think I was worried so much about myself. I had no idea what his intentions were or how far he was going at that point. But I was worried about the boys. . . .

\* \* \*

". . . I was worried about how far—about what was going to happen. Like I say I was trying to keep it right there in the bedroom with me and not do something that would waken Tim if he were asleep—you know, or wherever he was and get him in on it and end up with more of us involved than whatever might lie ahead."

The jury could have reasonably inferred from this testimony that the mother-in-law was being made to have sexual intercourse with Combs "forcibly against her will" and that Combs was guilty of rape beyond a reasonable doubt. Corroboration of the mother-in-law's testimony is not necessary. In *Tapp* v. *State* (1971), 256 Ind. 422, 426, 269 N.E.2d 367, 369, our Supreme Court held in an opinion written by Justice Prentice:

". . . [I]t has long been the law in Indiana that a conviction for rape, incest or assault with intent to rape may be had on the uncorroborated testimony of the prosecuting witness providing that such testimony was sufficient to convince the trier of facts of the defendant's guilt beyond a reasonable doubt. . . ."

Also see *Williams* v. *State* (1973), 260 Ind. 543, 297 N.E.2d 805; *Grimm* v. *State* (1970), 254 Ind. 150, 258 N.E.2d 407; *Douglas* v. *State* (1970), 254 Ind. 517, 261 N.E.2d 567; *Woods* v. *State* (1968), 250 Ind. 132, 235 N.E.2d 479; *Kuslulis* v. *State* (1930), 201 Ind. 660, 171 N.E. 5; and *Arnett* v. *State* (1973), 155 Ind. App. 82, 291 N.E.2d 376.

ISSUE TWO: Defendant's Instruction Three (3) submitted to the trial court was refused. This instruction is as follows:

"Jurors, you are instructed by the Court that the absence of any mark of violence or injury, even though the complain-

ing witness had been examined by a physician, and that the testimony or findings of such physician were that the married woman showed evidence of sexual intercourse does not corroborate a charge of rape committed on her, in the absence of proof of non-access by her husband."

There were no findings of a physician entered into evidence except those indirectly referred to by the mother-in-law in her testimony:

"Q. Later that day did you go to—or that night or the following day, did you go to a doctor?
"A. I did.
"Q. Which doctor?
"A. Dr. Park Huffman at South Whitley.
"Q. And he examined you?
"A. He did.
"Q. No marks or bruises or violence or anything on you was there?
"A. No."

The refusal of the tendered instruction on the effect of a physician's testimony and his findings after an examination is not error when the record shows that the physician did not testify and that his findings are not in evidence. *Johnson* v. *State* (1971), 256 Ind. 497, 269 N.E.2d 879, *cert. den.,* 405 U.S. 921 (1972); *LaDuron* v. *State* (1973), 157 Ind. App. 189, 299 N.E.2d 227.

Defendant's Instruction Five (5) which was refused by the trial court is as follows:

"You are instructed that the burden is on the State to prove the Defendant's guilt beyond a reasonable doubt and the Defendant cannot be required to establish his innocence beyond a reasonable doubt as to his guilt. The burden is where it is cast by the law, on the State, and no rule can shift such burden to the Defendant."

This instruction was given by the trial court instead:

"The State of Indiana has the burden of proving beyond a reasonable doubt that the defendant is guilty of the

charge in the affidavit. This burden never shifts from the State to the defendant.

"The defendant comes into this Court presumed to be innocent of the crime charged against him and this presumption follows him through every step of this trial unless that presumption is overcome by sufficient evidence to convince you of his guilt beyond a reasonable doubt.

"The defendant is not required to prove himself innocent or to establish any fact that would entitle him to an acquittal."

The State's burden was sufficiently covered by the trial court's instruction. There is no error committed when the trial court refuses an instruction which has already been covered by another instruction. *Blackburn* v. *State* (1973), 260 Ind. 5, 291 N.E.2d 686; *Lolla* v. *State* (1973), 260 Ind. 221, 294 N.E.2d 798.

ISSUE THREE: The trial court denied Combs' motion for directed verdict at the close of the State's evidence. In reviewing the overruling of a motion for a directed verdict, the test to be applied by this Court is whether there is a total absence of evidence on an essential element of the crime. *Hubble* v. *State* (1973), 260 Ind. 655, 299 N.E.2d 612; *Wojcik* v. *State* (1965), 246 Ind. 257, 204 N.E.2d 866. This Court has carefully examined the entire record. There is sufficient evidence of probative value upon every criminal element of rape from which the jury could have inferred that Combs was guilty beyond a reasonable doubt. Therefore, the motion for directed verdict was properly denied by the trial court.

The judgment of the trial court should be and the same hereby is affirmed.

NOTE.—Reported at 303 N.E.2d 289.