## BOYER *v.* THE STATE.

[No. 21,146. Filed January 17, 1908.]

1. CRIMINAL LAW.—*Offering Diseased Horse for Sale.—Statutes.*—Under §2508 Burns 1908, Acts 1907, p. 100, providing that "whoever shall offer for sale, or exchange for anything of value, any horse or mule, knowing the same to be * * * 'broken winded' * * * and shall conceal the existence of such disease from the person to whom he is offering such animal for sale * * * shall, on conviction thereof be fined," any person knowingly offering for sale a horse so diseased without so informing the person to whom the offer is made, is guilty of the offense described. Hadley and Gillett, JJ., dissenting. pp. 694, 698.

2. WORDS AND PHRASES.—*"Conceal."—Statutes.—Sales.—Criminal Law.*—The word "conceal," as used in §2508 Burns 1908, Acts 1907, p. 100, providing that any person who knowingly offers for sale a "broken-winded horse" or mule and who "conceals" the existence of such disease, shall be guilty of a misdemeanor, imports merely a failure by the offerer to communicate such fact to the person to whom the offer is made. p. 695.

3. STATUTES.—*Construction.*—In the construction of an act, the courts will try to ascertain the legislative intent, and in doing so, will consider the import of the entire act. p. 696.

4. SAME.—*Meaning of Words.*—The ordinary meaning of words of a statute will be adopted in the construction thereof, unless it is evident that such words were used in a technical or secondary sense. p. 697.

5. STATUTES. — *Construction.* — *Crimes.* — Statutes creating crimes are strictly construed, but such construction cannot be adopted when it will subvert the obvious legislative intent. p. 698.

6. EVIDENCE.—*Sufficiency.*—*Offering for Sale Diseased Horse.*— —*Criminal Law.*—Evidence showing that defendant knowingly purchased a "broken winded" horse, advertised it for sale and sold it to the prosecuting witness without disclosing the fact of such disease; that the prosecuting witness four days afterwards undertook to drive said horse, when he ascertained the existence of such disease; that after a long search he found defendant, who promised to supply another horse, but failed to do so, and defendant thereafter could not be found, supports a finding of guilty of unlawful offering of a "broken-winded" horse for sale, under §2508 Burns 1908, Acts 1907, p. 100. p. 698.

From Criminal Court of Marion County (36,385) ; *James A. Pritchard,* Judge.

Prosecution by the State of Indiana against John Boyer. From a judgment of conviction, defendant appeals. *Affirmed.*

*Charles B. Clarke, Walter C. Clarke* and *Clement M. Holderman,* for appellant.

*James Bingham,* Attorney-General, *A. G. Cavins, E. M. White, H. M. Dowling* and *Charles Remster,* for the State.

JORDAN, J.—Appellant was prosecuted upon an indictment for offering for sale a certain diseased horse, in violation of §2508 Burns 1908, Acts 1907, p. 100. His motion to quash the indictment was overruled, and upon trial by the court he was found guilty as charged, and his punishment assessed at a fine of $200 and imprisonment in the Marion county workhouse for a period of three months. He unsuccessfully moved for a new trial, and judgment was rendered against him upon the finding.

The errors assigned and discussed by his counsel are the insufficiency of the indictment and the insufficiency of the evidence to support the finding.

The statute upon which the prosecution is based, omitting the enacting clause, is as follows: *"Whoever shall offer for sale, or exchange for anything of value, any horse or mule,*

*knowing the same to be afflicted with 'glanders,' or any other infectious or contagious disease, or knowing the same to be afflicted with the 'heaves,' or to be 'broken-winded,' or to be what is popularly known as a 'roarer' or a 'cribber,' and shall conceal the existence of such disease from the person to whom he is offering such animal for sale, or with whom he is attempting to effect an exchange thereof,* or who shall employ any trick, artifice, drug, or any device of any character whatsoever to conceal the existence of such disease or defect, and shall thereby effect the sale or exchange of such animal to any person who is ignorant of the existence of such disease or defect, and shall by such sale or exchange obtain anything of value, shall on conviction thereof be fined in any sum not exceeding $500, to which may be added imprisonment in the county jail or workhouse for a period not exceeding six months." (Our italics.)

The indictment, omitting the formal parts, is as follows: "The grand jurors for the county of Marion and State of Indiana, upon their oaths present that John Boyer on June 15, 1907, at and in the county of Marion and State aforesaid, did then and there unlawfully offer for sale to Hugo Klingstein a certain horse for $38 in money, which said horse was then and there diseased in this, to wit, that said horse was then and there broken-winded, he, said John Boyer, then and there well knowing said horse to be diseased as aforesaid, and did then and there conceal the existence of such disease from said Hugo Klingstein, to whom he was then and there offering said diseased horse for sale, and did then and there and thereby effect the sale of said diseased horse to said Hugo Klingstein, he, said Hugo Klingstein, being then and there ignorant of the existence of said disease, and said John Boyer did then and there by such sale unlawfully obtain $38 in money of the value of $38 of the personal property of said Hugo Klingstein, contrary," etc.

It is urged by appellant's counsel that the indictment is insufficient because the positive facts constituting concealment

of the existence of the disease with which the horse in controversy was afflicted are not set out in the indictment. The argument is advanced that the concealment contemplated by the statute involved must be the result of such affirmative or positive facts as are calculated to prevent a discovery of the existence of the disease by the person to whom the horse is offered for sale or exchange. In respect to the question of concealment, counsel seek to have the indictment governed by the rule which obtains in regard to the concealment of the commission of a crime so as to prevent the running of the statute of limitation under §1666 Burns 1901, §1597 R. S. 1881, §1891 Burns 1908, Acts 1905, p. 584, §24, and in civil cases under §302 Burns 1908, §300 R. S. 1881.

The statute under consideration may properly be divided into two parts. The case at bar apparently is based upon the provisions of that part which we have embraced 1. in italics. These provisions declare it to be an offense in case any one offers for sale, or exchange for anything of value, any horse or mule which is afflicted with "glanders" or any other infectious or contagious disease, or which is afflicted with the "heaves," or is "broken-winded," or is what is popularly known as a "roarer" or a "cribber," where the person so offering such animal has knowledge at the time of the existence of such disease or infirmity, but conceals the existence thereof from the person to whom he is offering such animal for sale, or with whom he is attempting to effect an exchange thereof.

Under these provisions it is not necessary, in order to constitute an offense, that a sale or exchange of such animal should be effected. The offense is complete within the meaning of these provisions of the statute, without regard as to whether a sale or exchange of the animal is actually effected. Under that part of the statute not included in our italics, if a horse or mule is afflicted with any of the diseases or infirmities mentioned in or contemplated by the first part of

the statute, it is an offense for any person to employ any trick, artifice, drug or any device of any character whatsoever to conceal the existence of such disease or defect, and thereby effect the sale or exchange of such animal to a person who at the time is ignorant of the existence of such disease or defect, and by such sale or exchange obtain anything of value.

The underlying purpose of the statute is (1) to make it a criminal offense, subject to the punishment therein fixed, for a person to offer any horse or mule either for sale or exchange for anything of value, if the animal at the time it is so offered is afflicted with any of the diseases or defects mentioned in or contemplated by the statute, in case the person so offering the animal has at the time knowledge of the existence of the disease or defect in question, but conceals the existence thereof from the person to whom he is offering such animal for sale, or with whom he is attempting to effect an exchange thereof for something of value; (2) to prohibit, in case of such afflicted animal, the employment of any trick, artifice, drug, etc., to conceal the existence of such disease or infirmity and thereby effect the sale or exchange of the animal for value to a person who at the time is ignorant of the existence of the disease or infirmity with which such animal is afflicted.

The word "conceal," as employed in the first part of the statute, calls for an interpretation. The term manifestly is not there used in its primary sense—meaning "to hide," "to cover up," "to withhold from observation," but is used in its secondary sense, which is "to withhold from utterance or declaration," "to keep secret," "to fail to disclose." See the words "conceal" and "concealment" in Standard Dictionary, Webster's International Dictionary, and Century Dictionary. In respect to the interpretation of these terms see, also, 6 Am. and Eng. Ency. Law (2d ed.), 420; 8 Cyc. Law and Proc., 543, 544; 2

Words and Phrases, 1377, title, "Conceal;" *Dale County* v. *Gunter* (1871), 46 Ala. 118, 142; *Gerry* v. *Dunham* (1869), 57 Me. 334.

It will be observed upon examination that the word "conceal," according to the best lexicographers, also signifies "to withhold or to keep secret mental facts from the knowledge of another person, as well as to hide, cover up, or secrete physical objects from sight or observation." The phrase, as employed in this statute, "and shall conceal the existence of such disease from the person to whom he is offering such animal," etc., cannot be said to contemplate any corporeal object to be concealed by the person offering the animal, but evidently means, as the authorites affirm, where the offerer withholds or keeps secret from the person to whom he is making the offer the mental fact, that is, the knowledge which he has in his mind of the existence of the disease or infirmity with which the animal offered is afflicted. Such knowledge the offerer may be said to "withhold or keep secret" by failing to disclose or make known the existence of the disease to the person to whom he is offering the affected animal, and thereby conceals the existence thereof from such person. This appears to us to be the only reasonable meaning applicable to the term "conceal," in order to have it express that which was intended by the legislature in the employment thereof in the first part of the statute.

Courts, in construing a statute, will endeavor to determine the intention of the legislature, and in doing so they may

3.   and should consider the import of the entire act. An examination of the provisions of the statute in question in all of its parts reveals, as previously asserted, two leading objects or purposes in its enactment, one of which is to punish a person who offers to another for sale or exchange for anything of value a horse or mule affected with any of the diseases or infirmities therein mentioned, provided he has knowledge of the existence of such disease or infirmity but withholds such knowledge from the person to

whom the offer is made by failing to disclose to him the fact
that the animal is so diseased or affected at the time it is of-
fered for sale or exchange.　The statute, under such circum-
stances, casts upon the person who offers the animal for sale
or exchange for anything of value the duty of disclosing the
fact to the person to whom it is offered that it is afflicted with
the disease or infirmity in question.　In fact, the principle
affirmed by the authorities, in an action at law for damages
arising out of a fraudulent concealment of defects in per-
sonal property sold to another, is that the law presumes that
the purchaser reposes confidence in the vendor, as to all such
defects which are not within the reach of ordinary observa-
tion, and therefore it imposes upon the vendor the duty to
disclose fully and fairly his knowledge of all such defects.
His failure to do so is held to be a fraudulent concealment
of the fact in relation to the defects in question in such prop-
erty.　*Nickley* v. *Thomas* (1856), 22 Barb. 652; *Bench* v.
*Sheldon* (1852), 14 Barb. 66; *Fleming* v. *Slocum* (1820), 18
Johns. *403, 9 Am. Dec. 224.

While the legislature, in the enactment of the law, deemed
it proper to point out the particular means which were pro-
hibited from being employed to conceal the existence
of the disease and thereby effect the sale or exchange
of the diseased animal to a person without knowledge
of its condition, as provided in the second part of the statute,
nevertheless it did not deem it essential in the first part of
the act to specify any particular means which were pro-
hibited from being used to constitute a concealment of the
existence of the disease in a case where the animal is only
offered for sale or exchange.　It is a cardinal rule in the con-
struction of statutes "that where there is nothing in the act
itself to indicate that a word, or phrase, is used in a particu-
lar, or technical, sense, it is to be taken or accepted in its
ordinary and popular meaning.　The word, or phrase, is to
be interpreted in accordance with its meaning at the time of
the passage of the statute, * * * and it is only when it

will manifestly result in the defeat of the legislative intent that the words of the statute will not be construed in their plain, ordinary and usual sense." *Massey* v. *Dunlap* (1896), 146 Ind. 350, 358. See, also, *Church* v. *Knowles* (1906), 101 Me. 264, 63 Atl. 1042.

It is true, as counsel for appellant contend, that penal laws are to receive a strict construction. However, they are not to be so strictly construed as to defeat the obvious or express intent of the legislature. Gillett, Crim. Law (2d ed.), §20.

5.

While, as previously asserted, it was not essential in order to charge an offense against appellant under the first part of the statute that the indictment should allege that a sale of the horse was actually effected, the averments in respect to the sale of the horse may be disregarded as surplusage, and the remaining allegations therein may be said sufficiently to charge appellant with having violated the italicised portion of the statute by offering the horse, etc. The averment that he "did then and there conceal the existence of such disease from said Hugo Klingstein, to whom he was then and there offering said diseased horse for sale," is sufficient in charging the concealment of the existence of the disease within the meaning of the term "conceal," as employed in the first part of the statute. It follows that the court did not err in overruling the motion to quash the indictment.

1.

There is no room for the contention that the evidence does not support the finding of the lower court. The evidence, among other things, shows that appellant purchased the horse for a small sum of money at a livery barn in the city of Indianapolis in the early part of June, 1907. At the time he purchased the horse he was informed by the person who negotiated the sale that the animal was "broken-winded." Appellant had a barn in Indianapolis where he kept horses for sale, but did not take this particular horse to his barn, but placed it in a stable in the

6.

rear of Sullivan's saloon on Alabama street, in said city. This stable was about a mile from his own barn. After buying the horse he is shown to have advertised it for sale in a newspaper, stating therein that the animal was a "sound work horse." Hugo Klingstein, the person to whom the horse was offered for sale by appellant, as hereinafter shown, read the advertisement and went to the stable, in the rear of the saloon hereinbefore mentioned, to see the horse. Appellant was not there at the time, but presently drove up in a buggy and offered the horse for sale to said Hugo Klingstein for $38. At the time appellant offered the horse to Klingstein he knew, as the evidence shows, that it was "broken-winded," but Klingstein was ignorant of the fact that the animal was "broken-winded." Appellant did not in any manner disclose, make known or communicate to said Klingstein the fact that the horse was so affected or diseased, but, on the contrary, he declared to Klingstein that the animal was a "sound work horse." He finally succeeded in selling the horse to Klingstein for $38, the price at which he offered it, and received the money. Klingstein did not discover that the horse was "broken-winded" until about four days after the sale. After buying the horse he took it to his own stable, in the city of Indianapolis, and kept it there for about four days, and then hitched it to a light spring wagon and drove out upon the street. After driving for the distance of about a block, the horse, on account of being "broken-winded," "weaved and staggered," and would have fallen to the ground had it not been for the support of the shafts of the wagon. He was compelled to take the horse back to the stable, and then notified the "humane officer," an official of the city of Indianapolis, to come and get the horse and kill it. This officer came, took the horse away, and, as the evidence shows, had it "tubed," which is a treatment for a "wind-broken horse." Thereafter the humane officer appears to have disposed of the horse. After Klingstein had discovered the condition of the animal he made several unsuccessful

efforts to find appellant. He finally found him, but he claimed that he had never seen Klingstein, but finally admitted that he did know who he was, and promised to furnish him with another horse. Klingstein, however, was never thereafter able to locate him for the purpose of having him carry out his promise.

The evidence certainly supports the finding of the trial court upon every material point. Finding no error, the judgment is affirmed.

## CONCURRING OPINION.

HADLEY, J.—I concur in the result reached, but cannot agree with the majority in its interpretation of the statute. Looking to the evil to be remedied, I think the legislature, in the enactment of the statute, aimed at the punishment and prevention of the practice of inflicting injury upon others by concealment from them, in a horse trade, or sale, of a defective condition of the animal. A fraudulent concealment, I believe, is the core of the statute, and this concealment may be accomplished in either of two ways: (1) By passive silence, as set forth in the first division of the statute; (2) by the active means set forth in the second division; and in either case, to make the offense complete there must be a sale or trade effected.

Gillett, J., concurs in this opinion.