DENNIS *v.* STATE OF INDIANA.

[No. 28,735.   Filed January 7, 1952.]

Howard R. Hooper, of Indianapolis, for appellant.

J. Emmett McManamon, Attorney General; John Ready O'Connor and George W. Hand, Deputy Attorneys General, for appellee.

BOBBITT, J.—Appellant was indicted under the Acts of 1935, ch. 124, §1, p. 465, being §9-103, Burns' 1942 Replacement, on the charge of accessory after the fact of murder. Upon a plea of not guilty appellant was tried by jury, found guilty and sentenced to the Indiana State Prison for life.

Appellant's assignment of errors contains three specifications: (1) That the court erred in sustaining appellee's motion to amend the indictment; (2) The court erred in overruling the appellant's motion in arrest of judgment; (3) That the court erred in overruling appellant's motion for a new trial.

*First:* In view of the decision we have reached the questions presented by specifications one and two might arise in a new trial, so we shall consider them in this

appeal. These assignments present substantially the same question and will be considered together. The question thus presented is: Did the trial court err in permitting the state to amend the indictment after plea by adding the words "well knowing the commission of the felony aforesaid by the said Sam Dennis"?

After a defendant has entered his plea to a criminal charge, the state cannot amend the affidavit or indictment as to matters of substance. *State ex rel. Kaufman* v. *Gould* (1951), 229 Ind. 288, 98 N. E. 2d 184, 185, and cases there cited.

Said §9-103, Burns' 1942 Replacement, provides as follows:

> "Every person *not standing in the relation of husband or wife, parent or child,* to any person guilty of any felony, who shall, after the commission of such crime, *harbor, conceal or assist* such offender, *with intent that* he shall *escape from detection, capture, arrest or punishment,* shall be deemed an accessory after the fact, and may be charged, indicted, tried, convicted and punished, though the principal be neither charged, indicted, tried nor convicted; and, on such conviction, he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal. But in such charge the offense committed by the principal offender shall be stated, and it shall therein be charged that the accessory did so *harbor, conceal or assist* such offender, *with intent that* he *should escape detection, arrest, capture or punishment."* (Our italics).

The indictment under which appellant was tried and convicted, omitting formal parts, is as follows:

> "The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that GEORGE DENNIS on or about the 22nd day of June, A. D. 1946, at and in the County of Marion and in the State of Indiana, *not standing in the*

*relation of husband or wife, parent or child,* of SAM DENNIS, did then and there in the County and State aforesaid, unlawfully and feloniously *harbor, conceal and assist* the said SAM DENNIS *with intent that the said* SAM DENNIS should then and there and thereby *escape from detection, arrest, capture and punishment* for the commission of the crime of First Degree Murder, after the said SAM DENNIS, on this 22nd day of June, 1946, did then and there unlawfully, feloniously, purposely and with premeditated malice kill and murder one THOMAS BRIDEWELL," . . . . . "And so the Grand Jurors aforesaid, upon their oaths aforesaid, do say and charge that the said GEORGE DENNIS, not standing in the relation of husband or wife, parent or child, of SAM DENNIS [and well knowing the commission of the felony aforesaid by the said SAM DENNIS][1] and in the manner and form, and by the means aforesaid, unlawfully and feloniously did then and there *harbor, conceal and assist* the said SAM DENNIS *with the intent that* the said SAM DENNIS *should* then and there and thereby *escape from the detection, arrest, capture and punishment* for the commission of said crime, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana." (Our italics).

It is readily apparent from a comparison of the affidavit and statute as above set out that appellant is charged with the crime defined in said §9-103 in as nearly the identical language of the statute as it would be possible to use.

The indictment, before the amendment was made, was substantially in the language of the statute. It was, therefore, sufficient to charge the alleged offense before it was amended. *State* v. *Snyder* (1879), 66 Ind. 203; *Hicks* v. *State* (1926), 197 Ind. 294, 150 N. E.

---

[1] Brackets indicate words added by amendment.

759, 115 A. L. R. 360; *Bielich* v. *State* (1920), 189 Ind. 127, 126 N. E. 220.

Since the indictment was sufficient without the amendment, it follows that the phrase added by the amendment was surplusage and did not in any way change the crime charged or prejudice the substantial rights of the defendant (appellant). The amendment was not one of substance and it was not reversible error for the trial court to permit it to be made. The indictment was not rendered insufficient or improper by the surplusage contained in the amendment. *Souerdike* v. *State* (1951), 230 Ind. 192, 102 N. E. 2d 367; *Sheets* v. *State* (1940), 217 Ind. 676, 680, 30 N. E. 2d 309; *Ruffenbarger* v. *State* (1921), 190 Ind. 616, 618, 131 N. E. 514.

The trial court committed no error in sustaining appellee's motion to amend the indictment or in overruling appellant's motion in arrest of judgment.

*Second:* Having disposed of the question which might arise on a retrial of this action, we now consider appellant's assigned error No. 3 which is that the court erred in overruling appellant's motion for a new trial. While this motion contains six alleged errors the substantial question which it presents is that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. Appellant contends that there was insufficient evidence to sustain the conviction because there was no evidence of *corpus delicti* except the statement made to the police officers by appellant at the Indianapolis Detective office in police headquarters on July 29, 1946.

This court said in *Parker* v. *State* (1950), 228 Ind. 1, 6, 88 N. E. 2d 556, 89 N. E. 2d 442:

"The rule seems to be well established generally that an extra-judicial confession will not be ad-

mitted in evidence and a conviction will not be upheld until and unless the *corpus delicti* has been established by clear proof independent of the confession. *Gaines* v. *State* (1921), 191 Ind. 262, 268, 269, 132 N. E. 580; *Hunt* v. *State* [(1939), 216 Ind. 171, 23 N. E. 2d 681,] *supra; Messel* v. *State* (1911), 176 Ind. 214, 219, 95 N. E. 565; *Griffiths* v. *State* (1904), 163 Ind. 555, 558, 559, 72 N. E. 563; 1 *Wharton's Criminal Law* (12th Ed.), §§359, 360; 20 Am. Jur., Evidence, §484; 22 C. J. S., Criminal Law, §839,pp. 1471-2; 23 C. J. S., Criminal Law, §916b, p. 183; *Underhill's Criminal Evidence* (4th Ed.), §36; Anno., 127 A. L. R., 1130, 1134."

Proof of the *corpus delicti* means proof that the specific crime charged has actually been committed by someone. *Parker* v. *State* (1950), 228 Ind. 1, 6, 88 N. E. 2d 556, 89 N. E. 2d 442, *supra.*

In order to prove the *corpus delicti* in the case at bar there must be some evidence of probative value aside from the extra-judicial statement of appellant which he signed at the police station on July 29, 1946, showing that the crime charged in the indictment was committed by someone. *Parker* v. *State* (1950), 228 Ind. 1, 7, 88 N. E. 2d 556, 89 N. E. 2d 442, *supra.*

In order to sustain a conviction herein, it was necessary for the state to produce evidence of probative value aside from said extra-judicial statement, showing that appellant performed some personal act whereby he harbored, concealed or assisted his brother, Sam Dennis, for the purpose of helping him to evade capture and punishment for the crime which he had committed. The words "harbor," "conceal," and "assist" are not specifically defined in the act hence they will be given their ordinary and usual meaning consistent with their use.

"Harbor" as here used means to shelter, to give refuge, to lodge, care for and protect any person guilty of a felony. 39 C. J. S., Harbor or Harbour, p. 775.

"Conceal" as here used means to hide, secrete, to keep out of sight, or prevent the discovery of one guilty of a felony. *Boyer* v. *State* (1908), 169 Ind. 691, 695, 83 N. E. 350, 352; 15 C. J. S., Conceal, p. 792.

"Assist" as here used contemplates some positive, affirmative act intended to help or aid someone to escape arrest, capture or punishment.

The evidence relied upon by appellee to sustain the conviction of appellant is summarized in appellee's brief substantially as follows:

Frances Beacher, a witness for the state, testified that appellant and Sam Dennis were brothers, that Sam Dennis and his family lived with her at 1211 East 13th Street in Indianapolis, and that at about four o'clock on June 22, 1946, she saw appellant and Sam Dennis together in the house where Sam was living at the address on East 13th Street. There was no further testimony by state witnesses to show that appellant had seen his brother or had been with him at any time after two p. m. on June 22, 1946, the time when the alleged crime was committed. Appellant, on direct examination, testified that he left his work around four-thirty o'clock on the day the alleged murder was committed to go to a tavern at 19th and Yandes Streets, that he met one Ned Tyler who told him that the police were looking for his brother Sam. He then testified that he left the tavern at 19th and Yandes Streets and on his way to Moore's Tavern, between Martindale and Columbia Avenue, met one Ernest Dunlap; that he

told Dunlap what he had just heard concerning his brother Sam and asked Dunlap to walk with him to his brother's house on 13th Street; that when he arrived his brother was not at home, but while he was talking to Sam's wife he came in and at that time he asked Sam if he was in any kind of trouble and he said, "No."

Appellant then testified as follows: "I told him I heard on 19th Street that 'the police were looking for you.' He said, 'I can't help that; I haven't done anything.' I asked him, 'Will you let me use your gun? I'm going to Louisville and would like to take it with me?' I took it. Me and Ernest Dunlap left. That's the last time I saw him until the 29th day of July."

Appellant further testified that on Monday evening, June 24th, two police officers came to his house, after his brother Sam had been arrested, and asked him questions concerning his brother's habits and his associations. Appellant also testified that the police asked him if he owned a gun and he said, "No". Appellant further testified that on or about the night of June 24th he went to St. Louis to avoid being arrested for questioning in connection with the murder for which his brother had at that time been arrested.

Luella Dennis, appellant's wife, testified that he left Indianapolis and went to St. Louis a few days after June 22, 1946, and that the police were looking for appellant and his brother Sam while appellant was in Louisville on an excursion on June 23, 1946.

Police officers, Kleifgen and Cavender, testified that they received a 32 caliber Smith and Wesson revolver, which was later identified as the murder weapon, from the police in St. Louis at the time they were returning appellant to Indianapolis.

An examination of all the evidence in the record, to determine whether there is substantial evidence of probative value from which an inference might be drawn to support each essential element of the crime charged, discloses nothing of materiality on the questions of "harboring," "concealing," and "assisting" not contained in the above summary.

Considering other testimony in the record not summarized above, there was sufficient evidence to establish that a felony was committed by Sam Dennis. It was sufficiently established that appellant was not a relative of Sam Dennis within the degree of relationship in the exception provided by statute and there was sufficient evidence from which the jury might have drawn proper inferences that appellant had knowledge of the crime committed by his brother. However, when the extra-judicial statement is excluded, there is no evidence of probative value in the record to establish or prove that anyone: (1) Gave refuge to, sheltered, lodged, cared for or protected, or (harbored) appellant's brother, Sam Dennis, as alleged in the indictment; (2) That anyone hid, secreted, kept out of sight, (concealed), or prevented anyone from discovering the whereabouts of appellant's brother, Sam Dennis; and (3) There is no evidence that anyone performed any affirmative act with intent to help and/or assist Sam Dennis, the "principal offender" to escape detection, arrest, capture or punishment.

If the statement signed by appellant in the police station is eliminated, there is no evidence from which even a proper inference could be drawn which would tend to show that anyone harbored or concealed Sam Dennis (the principal offender) or in any way assisted him to escape detection, arrest, capture, or punishment. Moreover, we are not convinced from a careful examination of appellant's extra-judicial statement that

there is sufficient evidence to sustain his conviction of the crime charged even though the *corpus delicti* had been established independently of such statement. *Smith v. State* (1951), 229 Ind. 546, 99 N. E. 2d 417. The verdict of the jury is, therefore, not supported by sufficient evidence in one of the essential elements of the crime charged and is, therefore, contrary to law.

Since the other questions raised by appellant will not be likely to occur in another trial they will not be considered.

Judgment reversed with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 102 N. E. 2d 650.