MELVIN OVERTON *v.* STATE OF INDIANA; FREDDIE WHITE *v.* STATE OF INDIANA.

[Nos. 1-573A97; 1-573A98. Filed October 15, 1974. Rehearing denied December 4, 1974.]

*Michael J. McDaniel,* of New Albany, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

LYBROOK, J.—In this consolidated appeal, defendant-appellant Melvin Overton appeals from convictions of rape[1] and sodomy.[2] Defendant-appellant Freddie White appeals from convictions of being an accessory both before[3] and after[4] the fact of rape. Both Overton and White appeal from convictions of commission of a felony (rape) while armed with a deadly weapon.[5]

The following issues are presented for review:

(1) Whether the trial court erred in overruling appellants' motions challenging the array.

(2) Whether the evidence is sufficient to identify appellants as perpetrators of the offenses.

(3) Whether Overton's conviction of sodomy is sustained by sufficient evidence.

(4) Whether White's conviction of being an accessory after the fact of rape is sustained by sufficient evidence.

(5) Whether Overton's sentence of two (2) to twenty-one (21) years for sodomy is erroneous.

(6) Whether the court erred in imposing sentences for both greater and lesser and included offenses.

(7) Whether the indeterminate sentences imposed upon appellants represent an unlawful delegation of judicial power and constitute cruel and unusual punishment.

The facts most favorable to the State are:

On May 3, 1972, shortly after midnight of the preceding day, Overton approached an automobile in New Albany Community

---

1. IC 1971, 35-13-4-3, Ind. Ann. Stat. § 10-4201 (Burns Supp. 1974).
2. IC 1971, 35-1-89-1, Ind. Ann. Stat. § 10-4221 (Burns Supp. 1974).
3. IC 1971, 35-1-29-1, Ind. Ann. Stat. § 9-102 (Burns Supp. 1974).
4. IC 1971, 35-1-29-3, Ind. Ann. Stat. § 9-103 (Burns 1956).
5. IC 1971, 35-12-1-1, Ind. Ann. Stat. § 10-4709 (Burns Supp. 1974).

Park occupied by Carl Eickenberger and Patricia Culwell. Brandishing a knife and tire tool, Overton ordered Eickenberger from the automobile. He complied, and Miss Culwell followed. Overton was then joined by White and Alonzo Clark who were also brandishing tire tools or pry bars, and the trio led Eickenberger and Miss Culwell to the edge of a woods. Overton took Miss Culwell into the woods and after threatening to beat her with the tire iron, removed her jeans and blouse. After ordering her to remove her underwear, Overton performed sexual intercourse with Miss Culwell. Immediately thereafter she was forced to have intercourse with Alonzo Clark. Following these assaults, Overton, in Miss Culwell's words "... made me put my mouth on him."

While Miss Culwell was being assaulted, Eickenberger was restrained at knife point under threat of his life at the edge of the woods. When a police car appeared at the place where the young couple's automobile was parked, the men ran into the woods. As Eickenberger went to solicit the officers' assistance, Overton, White and Clark fled through the woods taking their nude victim with them. White periodically stopped and placed his arms around her.

Miss Culwell was subsequently abandoned and later found by Eickenberger and a police officer. Overton, White, and Clark were apprehended while attempting to flee the area.

## ISSUE 1.

The jury panel assembled at the time of trial consisted of twenty-seven persons, one of whom was a Negro. Appellants, who are black, contend that the panel did not constitute a true and accurate representative cross section of the community. However, on the record before us, we are unable to conclude that appellants were denied their right to trial by a fair and impartial jury of their peers.

As our Supreme Court stated in *Sanders* v. *State* (1972), 259 Ind. 43, 284 N.E.2d 751:

"It is well established that jury selection systems must draw their jurors from a fair cross section of the community. Smith v. Texas (1940), 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84. Equally clear, is that the defendant has the initial burden of demonstrating that purposeful discrimination exists. See, Whitus v. Georgia (1967), 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599; Hernandez v. Texas (1954), 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866. This matter was discussed in United States v. Butera (1st Cir. 1970), 420 F.2d 564, 569, where the court stated:

'[W]hile purposeful discrimination may connote an element of bad faith in ordinary usage, the term has not been so limited by the Supreme Court; rather, the breadth with which the term has been used by the Court indicates that *purposeful discrimination exists whenever significant unexplained disparities exist*. In other words, it is not the significant disparities themselves which are unconstitutional, Akins v. Texas, 325 U.S. [398 at 403-404, 65 S.Ct. 1276 [89 L.Ed. 1692; Hoyt v. Florida, 368 U.S. 57] at 69, 82 S.Ct. 159, 7 L.Ed.2d 118] ; they only raise the inference of discrimination. E.g., Billingsley v. Clayton, 359 F.2d 13, 17 (5th Cir. 1966), (en banc), cert. denied, 385 U.S. 841, 87 S.Ct. 92, 17 L.Ed.2d 74 (1966) ; Witcher v. Peyton, 382 F.2d 707, 709-710 (4th Cir. 1968) ; Salary v. Wilson, 415 F.2d 467, 470-471 (5th Cir. 1969). *Once that inference has been raised, it is the government's failure or inability to demonstrate that the disparities are not the product of discrimination which confirms the inference and invalidates the jury pool.'* (Our emphasis.)"

In the case at bar, appellants wholly failed to establish a "significant disparity" between the percentage of Negro citizens selected for jury duty and the percentage of Negro citizens in the community. The record is devoid of any evidence bearing upon this question. We therefore cannot determine that the court erred in overruling appellants' challenge to the array.

## ISSUE 2.

This and the following two issues present questions concerning the sufficiency of the evidence to sustain appellants' convictions. We are reminded that we may look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom to

determine whether there is substantial evidence of probative value from which the trier of fact might infer guilt beyond a reasonable doubt. *Capps* v. *State* (1972), 258 Ind. 565, 282 N.E.2d 833; *Arnett* v. *State* (1973), 155 Ind. App. 82, 291 N.E.2d 376.

We cannot agree with appellants' assertion that the evidence is insufficient to identify them as the perpetrators of the offenses charged. Eickenberger testified he could only identify appellants as resembling the persons confronting him in the park. However, Miss Culwell's identification of appellants was positive.

Appellants do not challenge the general rule that a conviction for rape may be sustained on the uncorroborated testimony of the victim. See, *Douglas* v. *State* (1970), 254 Ind. 517, 261 N.E.2d 567; *Grimm* v. *State* (1970), 254 Ind. 150, 258 N.E.2d 407. Rather, they attempt to focus our attention on *Meadows* v. *State* (1968), 252 Ind. 1, 238 N.E.2d 281, wherein the court reversed an order overruling a motion for new trial after a conviction of sodomy based solely on the uncorroborated testimony of the victim. In that case, however, the victim had been committed to a mental institution and had alternately testified that the defendant had and had not committed the illegal acts charged.

No analogy may be drawn between the *Meadows* decision and the case at bar. There is no allegation that Miss Culwell has ever been admitted to a mental institution, and appellants' argument attempting to draw the instant case within the purview of *Meadows* by emphasizing testimony that she exhibited signs of emotional strain or distress immediately following the attack is wholly without merit. Further, Miss Culwell did not give contradictory testimony on the question of whether appellants committed the illegal acts charged. Compare, *Hightower* v. *State* (1973), 260 Ind. 481, 296 N.E.2d 654.

The evidence most favorable to the State reveals that Miss Culwell had ample opportunity to observe her attackers. She

identified one of the men as he was apprehended near the scene of the crime. She identified appellants at a line-up the day following the attack. Clearly, the evidence adduced at trial was sufficient to identify appellants as the perpetrators of the offenses.

## ISSUE 3.

The evidence forming the basis of Overton's conviction of sodomy under IC 1971, 35-1-89-1, *supra,* is found in the following testimony of Miss Culwell:

> "Q. You have complained also in your statement here that an act of sodomy was committed. Describe to the jury was this subsequent to the second time you had been raped?
> A. Yes.
> Q. Now, who committed the act of sodomy?
> A. Melvin Overton.
> Q. And what did it consist of?
> A. He made me put my mouth on him."

In *Glover* v. *State* (1913), 179 Ind. 459, 101 N.E. 629, carnal copulation *per os* or *per anum* were determined to be included within our statutory definition of sodomy. The elements of these acts were more specifically delineated in the following passage from *Estes* v. *State* (1964), 244 Ind. 691, 195 N.E.2d 471:

> "The word 'sodomy', more fully described as the 'abominable and detestable crime against nature with mankind or beast,' as the term is used in the first clause of § 10-4221, *supra,* when practiced between members of the human species, has a clear and long established meaning. It means the copulation of the male organ of one with either the mouth or anus of the other."

Overton's specific contention is that Miss Culwell's testimony is insufficient to establish that his male organ was involved. We cannot agree. Viewed most favorably to the State and in light of all the attendant circumstances Miss Culwell's testimony clearly supports a strong inference that

it was Overton's penis upon which she was forced to place her mouth.

## ISSUE 4.

To sustain appellant White's conviction as an accessory after the fact, it was incumbent on the State to prove that:

". . . (1) A felony was committed. (2) Appellant did harbor, conceal, or assist the principal, with intent that he should escape detection, arrest, capture, or punishment. (3) Appellant had knowledge of the crime at the time of giving aid or assistance. (4) Appellant is not related to the person committing the . . . [felony]." *Smith* v. *State* (1951), 229 Ind. 546, 99 N.E.2d 417. See also, *Arterbery* v. *State* (1968), 249 Ind. 541, 233 N.E.2d 489; *Bielich* v. *State* (1920), 189 Ind. 127, 126 N.E. 220.

White contends that the State failed to prove that he in any manner harbored, concealed, or assisted Melvin Overton in escaping arrest or punishment. With this contention, we must agree. As police canvassed the vicinity of the attack, an officer encountered White and Overton in the back yard of a home. Disregarding a command to halt, the subjects turned and ran. As the officer pursued them on foot, they split and ran in different directions and were subsequently apprehended separately.

In our opinion, this evidence falls short of supporting a reasonable inference that White acted to harbor, conceal, or assist Overton to escape capture. White's conviction as an accessory after the fact must be reversed.

## ISSUE 5.

IC 1971, 35-1-89-1, *supra,* provides that a person convicted of sodomy shall be fined not less than one hundred dollars nor more than one thousand dollars, to which may be added imprisonment in the state prison for not less than two nor more than fourteen years. It is therefore evident that Overton's sentence for this offense of not less than two nor more than twenty-one years is erroneous.

Accordingly, the sentence for sodomy must be modified to a term of not less than two nor more than fourteen years. See, *Williams* v. *State* (1954), 233 Ind. 327, 119 N.E.2d 547.

## ISSUE 6.

Overton was charged in two separate counts with the offenses of rape and rape while armed. The jury returned verdicts of guilty on both counts and the court sentenced Overton on each count.

In *Robbins* v. *State* (1968), 251 Ind. 313, 241 N.E.2d 148, our Supreme Court held that:

". . . where the identical crime is charged in two separate counts, the only difference being that in one the defendant is additionally charged with being armed with a deadly weapon, judgment should only be entered for the greater offense and not upon both counts. *Carter* v. *State* (1951), 229 Ind. 205, 96 N.E.2d 273."

Overton's sentence of not less than two years nor more than twenty-one years for rape must therefore be vacated.

Similarly, since White was also tried, convicted and sentenced on a charge of rape while armed, his sentence of not less than two years nor more than twenty-one years as an accessory before the fact of rape must be vacated.

## ISSUE 7.

Appellants contend that their indeterminate sentences constitute an unlawful delegation of judicial power and are cruel and unusual punishment. Due to our resolution of foregoing issues, these contentions are moot save as to appellant Overton's modified sentence of not less than two years nor more than fourteen years for sodomy.

After this case was fully briefed, the arguments presented under this issue were fully considered and resolved in a manner adverse to appellant in *Clark* v. *State* (1974), 160 Ind. App. 206, 311 N.E.2d 439. Restating our analysis in this opinion would serve no useful purpose.

## CONCLUSION

Appellant Overton's sentence of not less than two nor more than twenty-one years for rape must be vacated. Overton's conviction for sodomy is affirmed with instructions to modify the sentence imposed to not less than two nor more than fourteen years.

Appellant White's conviction as an accessory after the fact of rape is reversed. His sentence of not less than two nor more than twenty-one years as an accessory before the fact must be vacated.

In all other respects the decision of the trial court is affirmed.

Affirmed in part, reversed in part.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 317 N.E.2d 467.