Wendell W. CLEMENTS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 63A04–0309–CR–487.

Court of Appeals of Indiana.

May 18, 2004.

Rehearing Denied July 7, 2004.

John Burley Scales, Frank R. Hahn,
Boonville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of
Indiana, Monika Prekopa Talbot, Deputy
Attorney General, Indianapolis, IN, Attor-
neys for Appellee.

1. Ind.Code § 35–44–3–2.

## OPINION

BAKER, Judge.

Today we are called to decide whether a
man may be convicted for assisting a crim-
inal because he "didn't follow [a police
officer's] commands to get his wife and
leave." Tr. p. 115. We determine that he
may not.

Appellant-defendant Wendell W. Clem-
ents appeals his conviction for Assisting a
Criminal,[1] a class A misdemeanor. Clem-
ents presents three issues for review, but
because we agree with Clements that the
State presented insufficient evidence to
convict him of the crime, we need not
address the remaining issues.

### FACTS

The facts most favorable to the verdict
reveal that on April 7, 2002, Indiana State
Police Officer Brett Poole received a letter
from a Pike County Jail employee stating
that Timothy "Possum" Aldridge would be
selling drugs out of his truck in the park-
ing lot of the Bob Inn, a local restaurant
owned by Clements. The letter gave a
detailed description of the make, model,
color, and license plate of the truck.
Based upon this information, Trooper
Poole drove by the Bob Inn and saw a
truck matching the description in the let-
ter. After proceeding for a few blocks,
Trooper Poole turned around and returned
toward the Bob Inn. However, when
Trooper Poole returned to the Bob Inn,
the truck was gone.

Trooper Poole was able to locate the
truck a distance away, began following it,
and activated his emergency lights. The
truck pulled into a gas station, and Al-
dridge exited the truck. Trooper Poole
pulled his vehicle into the station, but Al-
dridge had gone around that building and

had "already disappeared out of [Trooper Poole's] sight." Tr. p.52. Trooper Poole went around the building, and a pedestrian indicated that Aldridge had continued around the building. Trooper Poole actually caught up to Aldridge and asked Aldridge to accompany him to the front of the gas station.

Trooper Poole placed Aldridge into his police cruiser and asked Aldridge for identification. Aldridge stated that his identification was in his truck, so Trooper Poole allowed Aldridge to go to his truck. After reaching under the truck's seat, Aldridge produced a driver's license. Pike County Sheriff Deputy Ron Sharp arrived at the gas station, and Trooper Poole briefed him on the events that had transpired.

Trooper Poole then attempted a pat-down search of Aldridge to ensure that he had no weapons. The pat-down, however, was interrupted when a Ford Explorer pulled up to the gas station. The sixty-eight-year-old Clements was driving the vehicle, and his wife was the passenger. Mrs. Clements exited the Explorer asking Aldridge if there was a problem. Trooper Poole told Mrs. Clements that Aldridge was in custody and that she should leave.

Clements "hollered [Trooper Poole] over to his vehicle." Tr. p. 67. When Trooper Poole approached, Clements said that "he had a complaint that he felt I was harassing him." Tr. p. 67. Trooper Poole was familiar with Clements, who had "called [the] post on [a] number of occasions before, fairly recent ... right before that complaining that I was harassing the traffic at the Bob Inn and possibly hurting his business." Tr. p. 67. Clements stated that "he was gonna make a complaint, he wanted to know ... he specifically asked me my name and ID." Tr. p. 68.

Trooper Poole then heard the pedestrian say that Aldridge had thrown something down. Trooper Poole returned to where

Aldridge was standing and placed Aldridge in handcuffs. Trooper Poole and Deputy Sharp searched the area indicated by the pedestrian and found a cellophane wrapper—containing a white substance—with a wire tie. Trooper Poole did not attempt to field test the substance because only a small amount existed. Trooper Poole arrested Aldridge, however, because Aldridge had resisted law enforcement, and Aldridge was convicted of that charge on September 19, 2002.

On March 4, 2003, the State charged Clements with assisting a criminal because Clements was "distracting and hindering" Trooper Poole and Deputy Sharp while they were attempting to arrest Aldridge. Appellant's App. p. 121. A trial by jury commenced on March 19, 2003, and the jury found Clements guilty the same day.

At sentencing, the trial court addressed Clements as follows:

> [M]any of us who live here in Pike County have grown very weary of all this.
>
> . . .
>
> We all hear things here in Pike County don't we? [sic] We know that you've been involved in this kind of thing before, these aren't just inquiries about what's going on, this is harassment, it's unlawful, it's illegal, our legislator said so.
>
> . . .
>
> You have referred to the Court and members of the criminal justice system here, in profane and derogatory terms. This is true, say nothing, or I will call a witness and we will establish this. You have done things that are offensive to this Court and you know exactly what I'm talking about. I need to call witnesses here, I will if I have to.

Sent. Tr. p. 35–36. The trial court proceeded to sentence Clements to one year

in the Pike County Jail but suspended all but sixty days. Clements was ordered to serve the suspended portion of the sentence on probation. Clements now appeals.

### DISCUSSION AND DECISION

Clements first alleges that the State presented insufficient evidence to prove beyond a reasonable doubt that he committed the crime of assisting a criminal. Specifically, Clements contends that the State provided insufficient evidence of a personal act performed by him in order to assist Aldridge.

Though we do not reach the question of whether Clements's actions were constitutionally protected by Article I, section 9 of the Indiana Constitution, we note that the State's arguments in support of Clements's conviction are problematic in light of *Price v. State*, where our supreme court held that "[w]hen a citizen's protest is occasioned by the conduct of government actors and regards a matter of public concern, it is squarely within the public pale." 622 N.E.2d 954, 960 (Ind.1993). Here, Trooper Poole testified that Clements "was voicing his concern that I was bothering him. Something to the effect of harassing" his place of business. Tr. p. 70. Thus, Clements's speech may have also been "squarely within the public pale." *Id.*

Article I, section 9 notwithstanding, we note that to convict Clements of assisting a criminal, the State was required to show beyond a reasonable doubt that (1) Clements; (2) not standing in the relation of parent, child, or spouse to another person; (3) who has committed a crime or is a fugitive from justice who; (4) with intent to hinder the apprehension or punishment of the other person; (5) harbored, concealed, or otherwise assisted the person.

In *Dennis v. State*, our supreme court defined the meaning of the terms "harbors," "conceals," and "assists." 230 Ind. 210, 216, 102 N.E.2d 650, 653 (1952). Specifically, the *Dennis* court held that:

'Harbor' as here used means to shelter, to give refuge, to lodge, care for and protect any person guilty of a felony. 'Conceal' as here used means to hide, secrete, to keep out of sight, or prevent the discovery of one guilty of a felony. 'Assist' as here used contemplates some positive, affirmative act intended to help or aid someone to escape arrest, capture or punishment.

*Id.*, 230 Ind. at 217, 102 N.E.2d at 653–54 (citations omitted).

The State's theory was that Clements "was there ... distracting" Trooper Poole while Trooper Poole was arresting Aldridge. Tr. p. 110. We note that we reversed a conviction for assisting a criminal in *Overton v. State*, where one defendant was a supposed distraction for the escape of another defendant. In that case, White and Overton raped a woman at knifepoint. Police were alerted and pursued them. After being ordered to halt, Overton and White "split and ran in different directions." 161 Ind.App. 650, 657, 317 N.E.2d 467, 471 (1974). White was convicted of rape and of assisting a criminal. In their joint appeal, White argued that his conviction for assisting a criminal was supported by insufficient evidence. While we acknowledged that the pair split up, "this evidence falls short of supporting a reasonable inference that White acted to harbor, conceal, or assist Overton to escape capture." *Id.*

Here, the State's theory was also that Clements distracted the officers investigating Aldridge. Clements notes, however, that it was *Leah* who exited the Ford Explorer and that Clements only "remained in the vehicle during the encounter

with Trooper Poole." Appellant's Br. p. 9. Indeed, Trooper Poole himself testified that Clements was "in the vehicle" and that Trooper Poole "walked over" to speak with Clements. Tr. p. 67. Moreover, Trooper Poole told *Leah* that she was "interfering with the investigation" but also noted that he "didn't feel at that time [that] it was necessary for me to grab her and drag her away from it." Tr. p. 69. On cross-examination Trooper Poole acknowledged that Clements "*didn't attempt to interfere* but he didn't follow my commands to get his wife and leave." Tr. p. 115 (emphasis added). Trooper Poole's comments notwithstanding, we note that men have not been legally responsible for the actions of their wives since the nineteenth century.

In *Overton,* we found that the deliberate disregard and flight from a police officer could not constitute sufficient a distraction to end in a conviction for assisting a criminal. *Id.* Here, likewise, we cannot conclude that remaining seated in the Explorer and speaking to Trooper Poole constituted the requisite "positive, affirmative act" required to convict Clements of this offense. *See Dennis,* 230 Ind. at 217, 102 N.E.2d at 653–54. Thus, Clements's conviction may not stand.

The judgment of the trial court is reversed.

FRIEDLANDER, J., and BAILEY, J., concur.