

FILED

Jul 07 2020, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean P. Hilgendorf
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Tina L. Mann
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Takisha Monique Jacobs, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | July 7, 2020 <br><br> Court of Appeals Case No. <br> 20A-CR-277 <br><br> Appeal from the St. Joseph <br> Superior Court <br><br> The Honorable Jane Woodward <br> Miller, Judge <br><br> Trial Court Cause No. <br> 71D01-1802-F5-28 |

**Crone, Judge.**

## Case Summary

[1] Takisha Monique Jacobs appeals her conviction for level 5 felony assisting a criminal, arguing that it is unsupported by sufficient evidence. Finding the evidence sufficient, we affirm.

Court of Appeals of Indiana | Opinion 20A-CR-277 | July 7, 2020      Page 1 of 10

## Facts and Procedural History

[2] The facts that support Jacobs's conviction show that on January 18, 2018, at 8:03 p.m., police were dispatched to the intersection of Clover and Hildreth Streets in South Bend to investigate a report of possible shots fired. Police found a red car lying on its side on Hildreth Street with Tysiona Crawford unresponsive inside. She had been shot and killed.

[3] Police immediately began an investigation of Crawford's murder, and her boyfriend Rahim Brumfield became a person of interest. Brumfield's mother, Kickey Anderson, lived on Clover Street a few blocks away from where Crawford's body was found. Anderson and Jacobs are good friends, and Jacobs is Brumfield's godmother. Around 11:00 p.m. that evening, Jacobs received a phone call and went to Anderson's house. When Jacobs arrived, the police were already there talking to Anderson. Police were unable to locate Brumfield that evening.

[4] The following day, Jacobs and Anderson were in frequent communication, and at some point, Anderson and Brumfield went to Jacobs's house. The three later went to the Metro Homicide Unit to talk to police. When they arrived, the police did not ask to speak to Jacobs; they did not even know who she was. However, Jacobs told police that she had information about Brumfield's whereabouts the previous evening. At about 7:00 p.m., Detective Gery Mullins interviewed Jacobs. Jacobs explained to Detective Mullins that the previous evening, she was driving to Anderson's house, and she saw Crawford in her red car with Brumfield near Clover and Ruskin Streets. Jacobs told Detective

Mullins that she greeted Crawford and that Brumfield exited the passenger side of the red car and asked Jacobs for a ride. Jacobs said that she agreed to give Brumfield a ride and took him to Park Jefferson Apartments, where one of Brumfield's friends lived. She said that after she dropped him off, she drove home. She repeatedly stated that she did not remember exactly when she saw Brumfield and Crawford and gave Brumfield a ride, but that it was dark and it was not at sunset. Sunset occurred about 5:45 p.m. Tr. Vol. 1 at 57.

[5] As part of the murder investigation, Detective Timothy Wiley began creating a timeline of the events based on Jacobs's statements. The investigation revealed that on January 18, Jacobs was at work at Jackson-Hewitt Tax Service in Elkhart from 1:04 p.m. until 6:24 p.m. State's Ex. 8. Phone records show that she received a phone call at 6:23 p.m. and was in Elkhart. State's Ex. 21. In addition, Jacobs was in class at Ivy Tech in South Bend from about 7:00 p.m. until about 9:00 p.m. Tr. Vol. 1 at 82. Phone records indicated that Jacobs received a phone call at 8:48 p.m. and that she was at Ivy Tech. State's Ex. 23. Thirty-five minutes elapsed between the time Jacobs left Jackson-Hewitt and when she started class at Ivy Tech. However, based on Google Maps, it would have taken forty-eight minutes for a person to drive from Jackson-Hewitt to the place where Jacobs said that she picked up Brumfield, to Park Jefferson, and then to Ivy Tech. Tr. Vol. 1 at 134-35. Detective Wiley determined that Jacobs's statement that she picked up Brumfield and took him to Park Jefferson was not credible and that investigating her statement had slowed down the investigation into Crawford's murder. *Id*. at 136-37.

[6] The State charged Jacobs with level 5 felony assisting a criminal. A jury found her guilty as charged. The trial court sentenced her to four years, all suspended, and placed her on probation for three years. This appeal ensued.

## Discussion and Decision

[7] Jacobs challenges the sufficiency of the evidence supporting her conviction. In reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence that supports the judgment and the reasonable inferences arising therefrom. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). It is "not necessary that the evidence 'overcome every reasonable hypothesis of innocence.'" *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007) (quoting *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Bailey*, 907 N.E.2d at 1005.

[8] Jacobs was charged with and convicted of level 5 felony assisting a criminal, which is defined in Indiana Code Section 35-44.1-2-5 as follows:

> (a) A person not standing in the relation of parent, child, or spouse to another person who has committed a crime or is a fugitive from justice who, with intent to hinder the apprehension or punishment of the other person, harbors, conceals, or otherwise assists the person commits assisting a criminal, a Class A misdemeanor. However, the offense is:
>
> …

(2) a Level 5 felony, if the person assisted has committed murder or has committed a Class A felony before July 1, 2014, or a Level 1 or Level 2 felony after June 30, 2014, or if the assistance was providing a deadly weapon.

(b) It is not a defense to a prosecution under this section that the person assisted:

(1) has not been prosecuted for the offense;

(2) has not been convicted of the offense; or

(3) has been acquitted of the offense by reason of insanity.

However, the acquittal of the person assisted for other reasons may be a defense.

[9] "[T]he assisting a criminal statute was intended to apply to people who did not actively participate in the crime itself, but who did assist a criminal after he or she committed a crime." *Hauk v. State*, 729 N.E.2d 994, 999 (Ind. 2000). To convict a person for assisting a criminal, the State is not required to prove that the person who was assisted was prosecuted for and convicted of the crime. *See Gulbranson v. State*, 953 N.E.2d 533, 536 (Ind. Ct. App. 2011) (noting that prior version of statute was amended in 2009 to add subsection (b)). "The only mental element the State must prove in order to support a conviction for assisting a criminal is intent to hinder the assisted party's apprehension or punishment, regardless of whether the crime is charged as misdemeanor or a felony." *Jones v. State*, 22 N.E.3d 877, 881 (Ind. Ct. App. 2014). To prove

intent to hinder the assisted party's apprehension or punishment, the State is required to prove that the assisting party had reason to believe that the assisted person was subject to apprehension or punishment. *Id.* Proof of such intent may be established by circumstantial evidence. *See id.* (concluding that jury could infer from circumstances that defendant acted with intent to hinder assisted person's apprehension or punishment). However, "[t]he statute contains no requirement that the person assisting the criminal have knowledge of the level or type of felony the assisted person has committed, or that a felony has been committed at all." *Id.* at 880. For purposes of the assisting criminal statute, harbor means "to shelter, to give refuge, to lodge, care for and protect"; conceal means "to hide, secrete, to keep out of sight, or prevent the discovery of"; and assist "contemplates some positive, affirmative act intended to help or aid someone to escape arrest, capture or punishment." *Clements v. State*, 808 N.E.2d 198, 200 (Ind. Ct. App. 2004) (quoting *Dennis v. State*, 230 Ind. 210, 217, 102 N.E.2d 650, 653-54 (1952)).[1]

[10] Here, to convict Jacobs of level 5 felony assisting a criminal, the State was required to prove beyond a reasonable doubt that she, a person who is not a parent, child, or spouse of Brumfield, harbored, concealed, or otherwise assisted Brumfield, who had committed the crime of murder or was a fugitive from justice, with the intent to hinder his apprehension or punishment.

---

[1] We have modified these definitions to omit language stating that the assisted person is guilty of a felony because the statute has been amended and the State is no longer required to prove that the assisted person was convicted of the crime. *See Gulbranson*, 953 N.E.2d at 536.

Appellant's App. Vol. 2 at 181; Ind. Code § 35-44.1-2-5(a)(2). There is no dispute that Jacobs is not Brumfield's parent, child, or spouse, or that Brumfield committed murder.[2] Jacobs contends that there was no evidence that she was harboring or concealing Brumfield and no evidence that she was intending to hinder his apprehension. Therefore, according to Jacobs, her conviction could rest only upon a sufficient showing that she "otherwise assisted" Brumfield with the intent to hinder his punishment. Specifically, she asserts,

> The State's case is premised on the fact that since the evidence presented at trial shows that Jacobs' statement to the police is unlikely to be true and therefore she lied to the police to assist [Brumfield]. That ignores the fact that even if Jacobs was lying her statement did not on its face assist [Brumfield] and in fact did quite the opposite in that she put [him] and Crawford together on the day in question and also does not give Brumfield any alibi for any specific time.

Appellant's Br. at 9. We disagree.

[11] The evidence shows that Crawford was shot and killed around 8:00 p.m. Around 11:00 p.m., Jacobs went to Anderson's home while the police were there looking for Brumfield. However, there is no evidence that Jacobs told police that she had seen Brumfield with Crawford that evening and had driven Brumfield to Park Jefferson. The following day, Anderson and Brumfield went to Jacobs's home. Together, they went to the police department, at which time

---

[2] The parties stipulated to the fact that Brumfield was convicted of Crawford's murder.

Jacobs told police that she had information regarding Brumfield's whereabouts the previous evening. Although she did not provide police with a specific time, she said that she saw Brumfield with Crawford when it was dark and took Brumfield to Park Jefferson. She specifically told Detective Mullins that it was not at sunset. State's Ex. 7 at 21: 30. Sunset on January 18, 2018, was approximately 5:45 p.m. So, based on Jacobs's statement, sometime after the sun had fully set and it was dark, she saw Brumfield and Crawford and took Brumfield to Park Jefferson. If this were true, it would arguably support a reasonable inference that Brumfield was not with Crawford when she was murdered.

[12] However, evidence was presented to support a reasonable inference that Jacobs lied to police. Although she told Detective Mullins that she went home after she dropped off Brumfield, she was actually in a class at Ivy Tech from about 7:00 to about 9:00 p.m. In addition, she was at work in Elkhart until 6:24 p.m. There was only about thirty-five minutes between the time she left work and the time her class started. Google Maps indicated that if she had left work, picked up Brumfield, driven him to Park Jefferson, and then driven to Ivy Tech, it would have taken forty-eight minutes. The forty-eight minutes does not account for the wintry driving conditions on that date. From all this evidence, a reasonable jury could infer that Jacobs, Brumfield, and Anderson formulated a story at Jacobs's house before they went to the police station and that Jacobs lied to Detective Mullins to establish that Brumfield left Crawford while she was still alive and was not with Crawford when she was murdered. In other

words, the evidence supports a reasonable inference that Jacobs lied to help Brumfield avoid punishment by providing him with a false alibi. We conclude that the State presented sufficient evidence that Jacobs assisted Brumfield with the intent to hinder his punishment and therefore affirm her conviction for level 5 felony assisting a criminal.

[13] Because Jacobs's assistance to Brumfield involved lying to police, as a final matter we briefly consider the crime of false informing. As relevant to the circumstances of this case, a person commits class B misdemeanor false informing by giving false information, knowing the information to be false, in the official investigation of the commission of a crime. Ind. Code § 35-44.1-2-3(d). "However, the offense is a class A misdemeanor if it substantially hinders any law enforcement process or if it results in harm to another person." *Id*. The main distinction between assisting a criminal, where such assistance involves lying to the police, and false informing is that, in addition to giving false information knowing it to be false, assisting a criminal requires intent to hinder the apprehension or punishment of a person who has committed a crime. Here, there was certainly sufficient proof that Jacobs committed false informing. Based on the evidence supporting her intent to hinder Brumfield's punishment, she was properly charged with and convicted of assisting a criminal.[3]

---

[3] The offense of obstruction of justice is substantially different from that of assisting a criminal. Obstruction of justice involves the knowing or intentional inducement, "by threat, coercion, false statement, or offer of

Affirmed.

Bailey, J., and Altice, J., concur.

goods, services, or anything of value, [of] a witness or informant in an official proceeding or investigation to … withhold or unreasonably delay … producing any testimony, information, document or thing." Ind. Code § 35-44.1-2-2(a)(1).